Michael L. Kirby (50895)
  mkirby@knlh.com
Malcolm B. Roberts (242431)
  mroberts@knlh.com
**KIRBY NOONAN LANCE & HOGE LLP**
600 West Broadway, Suite 1100
San Diego, California  92101-3387
Telephone (619) 231-8666
Facsimile (619) 231-9593

Attorneys for Defendant GEMCO, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOND LABORATORIES, INC., a California corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>GEMCO, INC., a New Jersey corporation, and DOES 1-10, inclusive,<br><br>            Defendant. | CASE NO. 07CV2400 IEG NLS<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION IN NEW JERSEY, OR ALTERNATIVELY, TO DISMISS OR TRANSFER FOR IMPROPER VENUE**<br><br>Date:   February 25, 2008<br>Time:   10:30 a.m.<br>Judge:  The Hon. Irma E. Gonzalez<br>Crtrm:  1 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that Defendant Gemco, Inc. will appear on February 25, 2008 at 10:30 a.m., before the Honorable Irma E. Gonzalez in Courtroom 1 in the U.S. District Court for the Southern District of California located at 940 Front Street, San Diego, California, 92101 for a hearing on Defendant's Motion to Compel Arbitration.  Defendant seeks to compel arbitration in New Jersey based on the following grounds:

1.      Plaintiff Bond Laboratories, Inc. ("Bond") and Defendant Gemco, Inc. ("Gemco") are bound by the written arbitration provision, which requires binding arbitration in New Jersey, included in paragraph 16 of Gemco's TERMS AND CONDITIONS, all of which are part of the subject contract between Bond and Gemco

1  The Federal Arbitration Act and federal law compel Bond to conform to that

2  agreement;

3      2.     The contract between the parties clearly designates New Jersey as the

4  forum for any dispute arising out of Bond's purchase of the subject product from

5  Gemco, and this action has been filed in the wrong forum; and

6      3.     In the alternative, this Court should either dismiss this action for

7  improper venue due to the parties' agreement to resolve their disputes in New Jersey,

8  or transfer this action to the District of New Jersey.

9      Defendant's Motion is based on this Notice of Motion, the Memorandum of

10  Points and Authorities, the Declaration of Alicia John, the pleadings contained in the

11  Court's file, and such further evidence and matters that may be judicially noticed or

12  presented at the hearing.

13

14  DATED: January 3, 2008                    KIRBY NOONAN LANCE & HOGE LLP

15

16

17  By:  /s/ Michael L. Kirby
                    Michael L. Kirby

18                 mkirby@knlh.com
                    Attorneys for Defendant GEMCO, INC.

19

20

21

22

23

24

25

26

27

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   Michael L. Kirby (50895)
      mkirby@knlh.com
2   Malcolm B. Roberts (242431)
      mroberts@knlh.com
3   **KIRBY NOONAN LANCE & HOGE LLP**
    600 West Broadway, Suite 1100
4   San Diego, California  92101-3387
    Telephone (619) 231-8666
5   Facsimile (619) 231-9593

6   Attorneys for Defendant GEMCO, INC.

7

8                **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BOND LABORATORIES, INC., a            CASE NO.: 07CV2400 IEG NLS
     California corporation,
12                                         **MEMORANDUM OF POINTS AND**
                  Plaintiff,               **AUTHORITIES IN SUPPORT OF**
13                                         **GEMCO, INC.'S MOTION TO COMPEL**
          vs.                              **ARBITRATION, OR TO DISMISS FOR**
14                                         **IMPROPER VENUE**
     GEMCO, INC., a New Jersey
15   corporation, and DOES 1-10, inclusive,   Date:    February 25, 2008
                                              Time:    10:30 a.m.
16                Defendant.                   Judge:  The Hon. Irma E. Gonzalez
                                              Crtrm:  1
17

18

19

20

21

22

23

24

25

26

27

28

KNLH\503778.1

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION. ................................................................................................. 1

2. FACTUAL AND PROCEDURAL BACKGROUND. ............................................ 2

    A.    Factual History. ................................................................................... 2

    B.    Procedural History. ............................................................................. 3

3. PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION
PURSUANT TO FEDERAL LAW AND THE FEDERAL ARBITRATION
ACT. ................................................................................................................. 3

    A.    The FAA Governs this Motion. ........................................................... 3

        1)    Federal Law Governs This Motion. ........................................ 4

        2)    The Agreement To Arbitrate Is Enforceable Under The
FAA. ....................................................................................... 4

    B.    The Arbitration Clause In The Parties' Agreement Is Not Too
Vague To Be Given Effect. ................................................................. 5

        1)    Arbitration Clauses Are Broadly Construed. ........................... 5

    C.    The District Court Must Stay All Proceedings Between The Parties
Pending Completion of The Arbitration. .............................................. 6

    D.    The "Mail Box" Rule Presumes Bond Received Gemco's TERMS
AND CONDITIONS Which Contained an Arbitration Provision. .......... 7

    E.    The Arbitration Provision Was Not Inconspicuous. ............................ 8

    F.    Gemco's Written Arbitration Provision Should be Enforced. ............... 9

    G.    Arbitration Must Take Place in the State of New Jersey, in the
County of Middlesex. ........................................................................ 11

    H.    In the Alternative, this Action Should Be Dismissed or Transferred
to the U.S. District Court for the District of New Jersey. ................... 12

4. CONCLUSION. ............................................................................................... 13

Kirby Noonan Lance & Hoge LLP

600 West Broadway, Suite 1100 San Diego, California 92101-3387

1

# TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*Coors Brewing Co. v. Molson Breweries*
  (10th Cir. 1995) 51 F.3d 1511.................................................................. 10

5

*Dupuy-Busching General Agency, Inc. v. Ambassado Ins. Co.*
  (5th Cir. 1975) 524 F.2d 1275.................................................................. 11

6

7

*Hoefs v. CAVC of Colorado, LLC*
  (D.Mass. 2005) 365 F.Supp.2d 69........................................................... 7, 8

8

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*
  (4th Cir. 1988) 863 F.2d 315................................................................... 10

9

10

*M/S Bremen v. Zapata Off-Shore Co.*
  (1972) 407 U.S. 1 [92 S.Ct. 1907, 32 L.Ed.2d 513] .................................... 11

11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*
  (1983) 460 U.S. 1 [103 S.Ct. 927, 74 L.Ed.2d 765] .................................... 9

12

13

*Rodriguez v. American Technologies*
  (2006) 136 Cal.App.4[th] 1110................................................................ 8, 9

14

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*
  (5th Cir. 1976) 530 F.2d 679.................................................................. 12

15

16

*Schikore v. Bankamerica Supplemental Retirement Plan*
  (9th Cir. 2001) 269 F.3d 956.................................................................. 8

17

18

*Shearson/American Express, Inc. v. McMahon*
  (1987) 482 U.S. 220 [107 S.Ct. 2332, 96 L.Ed.2d 185] ............................. 9

19

*Simula, Inc. v. Autoliv, Inc.*
  (9th Cir. 1999) 175 F.3d 716.................................................................. 10

20

21

*Snyder v. Smith*
  (7th Cir. 1984) 736 F.2d 409.................................................................. 11

22

23

*Textile Unlimited, Inc. v. A..BMH & Co., Inc.*
  (9th Cir. 2001) 240 F.3d 781.................................................................. 12

24

*Whiteside v. Teltech Corp.*
  (4th Cir. 1991) 940 F.2d 99.................................................................... 3

25

26

27

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

STATUTES

9 U.S.C. § 2 ................................................................................................ 9, 10

9 U.S.C. § 4 ............................................................................................. 3, 11, 12

28 U.S.C. 1406 (a) ......................................................................................... 12

28 U.S.C. § 1406 (a) ...................................................................................... 12

28 U.S.C. § 1441(b) ...................................................................................... 1, 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\503778.1

iii

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1    **1. INTRODUCTION.**

2    Defendant Gemco, Inc. ("Gemco") files this Motion to Compel Arbitration in

3    New Jersey of all causes of action alleged by Plaintiff Bond Laboratories, Inc.

4    ("Bond") because both parties previously agreed that any and all disputes would be

5    resolved by binding arbitration in New Jersey.

6    This case stems from a written agreement to purchase a commercial blender.

7    Gemco, a corporation with its principal place of business in Middlesex, New Jersey,

8    manufactures dryers and blenders for the purpose of processing free flowing

9    powders. Bond, a corporation located in Murrieta, California, purchased a blender

10   from Gemco in an attempt to manufacture nutraceutical products. A dispute arose

11   regarding the performance of the blender.

12   Bond filed a Complaint against Gemco in Superior Court of the State of

13   California, San Diego County alleging claims for breach of contract and breach of

14   implied covenant of good faith and fair dealing. Service was effected on Gemco on

15   December 11, 2007. Gemco filed a timely Notice a Removal of Action to this Court

16   pursuant to 28 U.S.C. § 1441(b).

17   Gemco now moves to compel arbitration in Middlesex, New Jersey pursuant to

18   the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, federal law, and  the

19   arbitration provision included in paragraph 16 of Gemco's TERMS AND

20   CONDITIONS. Attached hereto as Exhibit 1 is a true copy of Gemco's TERMS AND

21   CONDITIONS which are part of the parties' operative contract. The arbitration

22   provision contained in paragraph 16 mandates that "any and all disputes between

23   Gemco and Bond be resolved by arbitration in Middlesex, New Jersey." Thus, this

24   Court should enforce Bond and Gemco's agreement to arbitrate in Middlesex, New

25   Jersey, or, in the alternative, dismiss or transfer this action to the U.S. District Court of

26   the District of New Jersey.

27   / / /

28   / / /

KNLH\503778.1

-1-

## 2. FACTUAL AND PROCEDURAL BACKGROUND.

### A.   Factual History.

Bond purchased from Gemco one (1) 5 CF slant Cone Liq/Sol Agitator Portable, per Gemco proposal number 060814-01 (the "Blender"). Bond faxed its purchase order to Gemco on August 14, 2006, a true copy of which is attached hereto as Exhibit 2. On or about August 17, 2006, Alicia John, a 14 year employee of Gemco, then sent a letter with the attached TERMS AND CONDITIONS via U.S. mail addressed to Bond at 38340 "H" Innovation Court Unit 803, Murrieta, CA 92562. See ¶ 6 of Alicia John's Declaration ("John Declaration") filed herewith. A true copy of that August 17, 2006 letter is attached as Exhibit A thereto.

Among other things, Gemco's letter included the total purchase price, terms of payment, scheduled shipment date and a job number. John Declaration, ¶ 3. The fifth paragraph of that letter noted that "The attached terms and conditions are part of this order." *Id.*, ¶¶ 3-4; Exhibit 1 thereto, ¶ 15.

The Blender was delivered to Bond on December 20, 2006. [Complaint, ¶ 12.] Bond claimed that the Blender was defective. Despite Gemco's reasonable attempts to repair the Blender, which Gemco believes were successful, Bond claims that the Blender is still defective. This lawsuit by Bond followed.

Bond and Gemco are bound by Gemco's TERMS AND CONDITIONS. Gemco's TERMS AND CONDITIONS contains an arbitration provision which governs disputes between Bond and Gemco. Paragraph 16 of Gemco's Terms and Conditions states:

> 16. **REMEDIES –** In the event of a dispute between Seller and Buyer, any and all disputes shall be resolved by arbitration, in the State of New Jersey, in the County of Middlesex. In no event shall the Seller be liable for special, incidental and/or consequential damages incurred; including without limitation, lost profits.
>
> [Exhibit 1, ¶ 16.]

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1   "Any and all disputes shall be resolved by arbitration" as written in paragraph 16

2   means that Bond's claim that the Blender is allegedly defective shall be resolved by

3   arbitration in New Jersey.

4       **B.    Procedural History.**

5       On August 15, 2007, Bond filed a Complaint in Superior Court of the State of

6   California, San Diego County, against Gemco for alleged breach of contract and

7   breach of implied covenant of good faith and fair dealing.  Pursuant to a written

8   stipulation between Bond and Gemco, service of the Summons and Complaint on

9   Gemco took place on December 11, 2007.  Gemco filed a Notice of Removal of

10  Action to this Court on December 21, 2007 pursuant to 28 U.S.C. § 1441(b).

11      Based on Bond and Gemco's written agreement to arbitrate "any and all

12  disputes", Gemco now moves to compel Bond to arbitrate all of its disputes against

13  Gemco in the State of New Jersey, in the County of Middlesex, pursuant to their

14  written agreement, federal law and the FAA.

15  **3. PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION PURSUANT
    TO FEDERAL LAW AND THE FEDERAL ARBITRATION ACT.**

16

17      **A.    The FAA Governs this Motion.**

18      The FAA governs this motion and requires that this Court compel arbitration

19  between Gemco and Bond pursuant to the TERMS AND CONDITIONS of their

20  agreement.  The FAA requires enforcement of arbitration agreements pursuant to the

21  terms of those agreements.  9 U.S.C. § 4.  In order to state a claim to compel

22  arbitration under the FAA, a petition or motion only needs to assert the existence of a

23  dispute between the parties; a written agreement that includes an arbitration provision

24  purporting to cover the dispute; interstate or foreign commerce; and the opposing

25  party's failure or refusal to arbitrate the dispute.  *Whiteside v. Teltech Corp.* (4th Cir.

26  1991) 940 F.2d 99, 102.

27      In this case, the agreement involves corporations from different states engaged

28  in the buying, selling and transportation of goods over state lines.  The U.S. Supreme

KNLH\503778.1                          -3-

CASE NO.: 07CV2400 IEG NLS

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1  Court has held that interstate commerce for purposes of the FAA is implicated by a

2  consulting contract between corporations incorporated in different states. *See Prime*

3  *Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed.

4  2d 1270 (1967). Likewise, in *Mesa Operating Ltd. Partnership v. Louisiana Interstate*

5  *Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986), the court stated:

6         [C]itizens of different states engaged in performance of
           contractual operations in one of those states are engaged
7         in a contract involving commerce under [the Federal
           Arbitration Act]. Such a contract necessitates interstate
8         travel of both personnel and payments.

9

10        Because the agreement in dispute clearly involved interstate travel of goods

11  and payments, the FAA applies here.

12         **1)    Federal Law Governs This Motion.**

13        The Ninth Circuit has affirmed that the "validity of an arbitration agreement

14  affecting commerce is determined by federal law." *ATSA of California, Inc. v.*

15  *Continental Ins. Co.*, 702 F.2d 172, 174 (9th Cir. 1983). "Federal law preempts state

16  law on issues of arbitrability." *Howard Fields & Associates v. Grand Wailea Co.*, 848

17  F.Supp. 890, 892 (D. Ha. 1993). This can be true in some cases even where the

18  clause explicitly provides for a certain state law to be applied. *Id.* at 893.

19         **2)    The Agreement To Arbitrate Is Enforceable Under The FAA.**

20        In *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 2 L.

21  Ed. 2d 158 (1985), the Supreme Court explained the approach that courts should

22  take in arbitrable cases:

23        The Arbitration Act provides that written agreements to
          arbitrate controversies arising out of an existing contract
24        "shall be valid, irrevocable, and enforceable, save upon
          such grounds as exist at law or in equity for the revocation
25        of any contract." 9 U.S.C. § 2. By its terms, **the Act leaves
          no place for the exercise of discretion** by a district court,
26        but instead mandates that **the district court shall direct
          the parties to proceed to arbitration** on issues to which
27        an arbitration agreement has been signed. §§ 3, 4. Thus,
          insofar as the language of the Act guides our disposition of
28        this case, we would conclude that agreements to arbitrate

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1     must be enforced, absent a ground for revocation of the
      contractual agreement.

2

3   470 U.S. at 218 (emphasis added).

4       Section 4 of the FAA provides in relevant part that:

5           A party aggrieved by the alleged failure, neglect, or refusal
            of another to arbitrate under a written agreement for
            arbitration may petition any United States district court...for
6           an order directing that such arbitration proceed in the
            manner provided for in such agreement.

7

8   9 U.S.C. § 4.  *See also, Paine Webber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir.

9   1995) (party is entitled to an order compelling arbitration under Section 4 of the FAA

10  when one party refuses to arbitrate).

11      **B.     The Arbitration Clause In The Parties' Agreement Is Not Too
                 Vague To Be Given Effect.**

12          **1)     Arbitration Clauses Are Broadly Construed.**

13      "There is a strong congressional policy favoring arbitration."  *Moses H. Cone*

14  *Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983);

15  *Howard Elec. & Mech. v. Frank Briscoe Co.*, 745 F.2d 847, 850 (9th Cir. 1985);

16  *Howard Fields, supra*, 848 F.Supp. at 895.  "[A]s with any contract, the parties'

17  intentions control, but those intentions are generously construed as to issues of

18  arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

19  626, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d. 444 (1985); *Three Valleys Mun. Water*

20  *District v. E.F. Hutton*, 925 F.2d 1136, 1139 (9th Cir. 1991).

21      In *ATSA of California, supra*, 702 F.2d at 174, the Ninth Circuit affirmed the

22  District Court's decision to stay all proceedings pending a final arbitration award,

23  despite the fact that the arbitration clause contained in the agreement [unlike the

24  agreement here] did not designate either the governing law or the forum for

25  arbitration:

26          ATSA argues that arbitration should not be compelled
            because the arbitration clause in its agreement with Cairo
27          does not designate either the governing law or the forum for
            arbitration.  ATSA's argument has no merit.

28

KNLH\503778.1

1    In *Schulze*, *supra*, the arbitration clause in the seller's written agreement failed

2  to specify who would arbitrate any dispute that should arise, where that arbitration

3  would take place, and which arbitration rules would apply.  831 F.2d at 715-716.  The

4  clause merely stated that: "ALL DISPUTES UNDER THIS TRANSACTION SHALL BE

5  ARBITRATED IN THE USUAL MANNER."  *Id.* at 716.  The Seventh Circuit rejected

6  the argument that the arbitration clause was too vague to be enforced, stating:

7    What the clause requires the parties in the present case to
    do is clear:  arbitrate all disputes.  They did not provide
8    such implementing details as who the arbitrators would be,
    where arbitration would take place, and what procedures
9    would govern.  But the district court was able to supply
    those details.
10
    The Federal Arbitration Act expressly requires the court, at
11    the behest of either party, to name an arbitrator when the
    parties' agreement has not named one.  9 U.S.C. § 5.  That
12    arbitrator then acts with the same authority as if he had
    been designated by the parties' contract.  The Act thus
13    contemplates a clause like the clause in the present case,
    which does not specify the arbitrator.
14
                            * * *
15
    Thus, the clause is not too vague to be enforced.  The
16    district court was able to direct enforcement of the clause
    without resort to speculation and without writing a clause for
17    the parties.

18  831 F.2d at 716.

19    As is evident from *ATSA* and *Schulze*, and the FAA itself, an arbitration clause

20  need not be complex or specific.  A simple clause that evidences the parties' intent to

21  arbitrate their disputes is sufficient.  The agreement here clearly does so.

22    **C.    The District Court Must Stay All Proceedings Between The**
    **Parties Pending Completion of The Arbitration.**
23

24    Under the FAA, a Federal District Court "upon being satisfied that the issue it

25  involved [in the case before it] is referable to arbitration under such an agreement,"

26  must on application stay any proceedings pending arbitration.  *See Pearce v. E.F.*

27  *Hutton Group, Inc.*, 828 F.2d 826, 829-830 (D.C. Cir. 1987).  Here the Court must

28  stay all proceedings until the arbitration is completed, including any attempt by Bond

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

1  to pursue litigation in anywhere in violation of the arbitration clause.

2      In this instance, there is a dispute between Bond and Gemco regarding the

3  performance of the Blender; Gemco's TERMS AND CONDITIONS includes an

4  arbitration provision; the sale of the Blender from Gemco which is located in New

5  Jersey to Bond which is located in California involves interstate commerce; Bond's

6  Complaint filed against Gemco in San Diego is indicative of its refusal to arbitrate.

7  Accordingly, the FAA governs this dispute.

8  **D.    The "Mail Box" Rule Presumes Bond Received Gemco's TERMS**
   **AND CONDITIONS Which Contained an Arbitration Provision.**

9

10     On August 17, 2006, Gemco sent Bond a letter with the attached TERMS AND

11  CONDITIONS via U.S. mail addressed to Bond Laboratories at 38340 "H" Innovation

12  Court Unit 803, Murrieta, CA 92562.  (John Declaration, ¶ 6, Exhibit A and B, thereto.)

13  The "mailbox rule" is a settled feature of the federal common law which provides that

14  the proper and timely mailing of a document raises a rebuttable presumption that the

15  document has been received by the addressee in the usual time.  *Hoefs v. CAVC of*

16  *Colorado, LLC* (D.Mass. 2005) 365 F.Supp.2d 69, 72-73.  Notably, California

17  Evidence Code Section 641 also provides that a letter correctly addressed and

18  properly mailed is presumed to have been received in the ordinary course of mail.

19     In *Hoefs, supra,* the court held that the plaintiff did not rebut the presumption

20  under the "mailbox rule" which meant that it was presumed that she received the

21  arbitration amendment sent in the mail by the defendant.  The court reasoned that the

22  mailbox presumption applied and was not rebutted because an employee of the

23  defendant testified at his deposition that in December of 1999, it was in their "normal

24  course of business" to send arbitration amendments to all card holders whose

25  accounts were in good standing.  *Id.* at 73.  The court also noted that the defendant

26  did not receive any returned mail from the plaintiff.  *Id.*  Hence, without any contrary

27  evidence, the court presumed that plaintiff received notice of the arbitration

28  amendment requiring her to arbitrate her claim against defendant.  *Id.* at 74.  *See*

KNLH\503778.1

-7-

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1    *also, Schikore v. Bankamerica Supplemental Retirement Plan* (9th Cir. 2001) 269 F.3d

2    956.

3       Similarly, the mailbox rule is applicable to these facts as Gemco sent Bond a

4    letter with the attached TERMS AND CONDITIONS which included an arbitration

5    provision. (John Declaration, ¶ 6.) Accordingly, under the "mailbox rule", the mailing

6    of the letter by Gemco with the attached TERMS AND CONDITIONS raises the

7    rebuttable presumption that the letter and the attached TERMS AND CONDITIONS

8    were received by Bond.

9       In addition, Alicia John, an employee of Gemco for approximately 14 years, has

10    declared under penalty of perjury that it was Gemco's custom and practice to send a

11    letter with the attached TERMS AND CONDITIONS of each purchase order to all

12    customers that order or purchase Gemco products. (John Declaration, ¶ 4.) Based

13    on the experience of Alicia John, a customer such as Bond would have to receive

14    such a letter from Gemco or the customer would not know the purchase price, terms

15    or estimated delivery of the product. (John Declaration, ¶ 8.)

16       The defendant in *Hoefs* did not receive any returned mail from plaintiff.

17    Likewise, neither did Gemco receive any returned mail from Bond to indicate that

18    Bond did not receive mail at 38340 "H" Innovation Court Unit 803, Murrieta, CA

19    92562. (John Declaration, ¶ 8.) Therefore, it is presumed under the "mailbox rule"

20    that Bond received Gemco's letter with its attached TERMS AND CONDITIONS that

21    was sent on August 17, 2006 which contained the arbitration provision.

22       **E.**    **The Arbitration Provision Was Not Inconspicuous.**

23       The arbitration provision located in paragraph 16 of Gemco's TERMS AND

24    CONDITIONS was not inconspicuous. In fact, it was easy to discover as it was

25    located on the third page of Gemco's TERMS AND CONDITIONS and was one of

26    only 23 TERMS AND CONDITIONS.

27       In *Rodriguez v. American Technologies* (2006) 136 Cal.App.4[th] 1110, the court

28    held that the plaintiff assented to the arbitration provision where the front page of the

contract contained the clause: "REVERSE SIDE TERMS: The terms and conditions on the reverse side of the proposal are incorporated herein by reference." *Id.* at 1124. On the reverse side of the contract was the heading "ARBITRATION" in bold capital letters. *Id.* Hence, the court in *Rodriguez* held that at least one of the plaintiffs assented to the contract and its arbitration clause.

Similarly, the fifth paragraph of Gemco's August 17, 2006 letter provided:

> The attached terms and conditions are part of this order. If not attached, please contact GEMCO [1-800-OK-GEMCO] for additional copies of our terms and conditions.
> [Exhibit A to John Declaration, ¶ 5.]

The phrase "the attached terms and conditions are part of this order" means that Gemco's TERMS AND CONDITIONS includes the arbitration provision located in paragraph 16. [*Id.,* ¶ 16.] Gemco's arbitration provision in paragraph 16 was readily discoverable since it fell under the heading "REMEDIES" in bold capital letters.

## F.    Gemco's Written Arbitration Provision Should be Enforced.

Federal courts are required to rigorously enforce parties' agreement to arbitrate. *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220 [107 S.Ct. 2332, 96 L.Ed.2d 185]. Section 2 of the FAA provides in pertinent part:

> A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…*shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

Section 2 of the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 74 L.Ed.2d 765]. In effect, Section 2 is a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. *Id.*

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1    The FAA embodies a clear federal policy in favor of arbitration. *Simula, Inc. v.*

2  *Autoliv, Inc.*, (9th Cir. 1999) 175 F.3d 716, 719. In *Simula, Inc.*, an inventor of an

3  automotive air bag system filed a lawsuit against a supplier of automotive

4  components for various causes of action. The supplier of automotive components

5  filed a motion to compel arbitration pursuant to its written agreement with the inventor

6  which provided in pertinent part that "all disputes arising in connection with this

7  agreement shall be finally settled under the rules of conciliation and arbitration of the

8  international chamber of commerce." *Id.* at 720. The court concluded that the phrase

9  "arising in connection with" reached every dispute between the parties having a

10  significant relationship to the contract and all disputes having their origin or genesis in

11  the contract. Consequently, the court held that the claims were subject to the

12  arbitration agreement. See *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.* (4th

13  Cir. 1988) 863 F.2d 315, 321 (holding that an arbitration agreement providing that "all

14  disputes arising in connection with the present contract shall be finally settled" by

15  arbitration was sufficiently broad in scope to include claims for unfair trade practices,

16  libel, and defamation.) See also *Coors Brewing Co. v. Molson Breweries* (10th Cir.

17  1995) 51 F.3d 1511, 1515.

18    Here, Bond's claims of breach of contract and breach of implied covenant of

19  good faith and fair dealing are subject to arbitration. [Complaint, ¶ 1-36.] The

20  arbitration agreement between Bond and Gemco clearly provides that "in the event of

21  a dispute between Seller and Buyer, any and all disputes shall be resolved by

22  arbitration, in the State of New Jersey, in the County of Middlesex." [Exhibit 1 hereto,

23  ¶ 16.] Thus, "any and all disputes" by Bond against Gemco shall be resolved by

24  arbitration. Just as the court in *Simula, supra,* reasoned that the language "arising in

25  connection with" reached every dispute between the parties having a significant

26  relationship to the contract, so should this Court reason that the phrase "any and all

27  disputes shall be resolved by arbitration" means that Bond's claims for breach of

28  contract and breach of implied covenant of good faith and fair dealing are also subject

1  to arbitration.

2  **G.    Arbitration Must Take Place in the State of New Jersey, in the**
       **County of Middlesex.**

3

4      Bond's claims against Gemco are not only subject to arbitration, but the

5  arbitration between Bond and Gemco shall take place in the State of New Jersey, in

6  the County of Middlesex pursuant to the arbitration agreement.  [John Declaration,

7  Exhibit A, ¶ 16.]  9 U.S.C. § 4 provides in pertinent part that "a party aggrieved by the

8  alleged failure, neglect, or refusal of another to arbitrate may petition any United

9  States district court…for an order directing that such arbitration proceed in the

10  manner provided for in such agreement."

11      Paragraph 16 of the arbitration agreement provides in pertinent part that "any

12  and all disputes shall be resolved by arbitration, *in the State of New Jersey, in the*

13  *County of Middlesex*." [John Declaration, Exhibit A, ¶ 16 (emphasis added).]  An

14  arbitration agreement, including its forum selection clause, is a freely-negotiated

15  contract between the parties.  *Snyder v. Smith* (7th Cir. 1984) 736 F.2d 409.  Courts

16  must give effect to such freely negotiated forum selection clauses.  *Id.*   See also

17  *Dupuy-Busching General Agency, Inc. v. Ambassado Ins. Co.* (5th Cir. 1975) 524 F.2d

18  1275 (court ordered arbitration in New Jersey pursuant to the forum selection clause.)

19      In *M/S Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1 [92 S.Ct. 1907, 32

20  L.Ed.2d 513], the Supreme Court noted that when the choice of forum was made in

21  an arms-length negotiation by experienced and sophisticated businesspersons, and

22  absent some compelling and countervailing reason, it should be honored by the

23  parties and enforced by the court.  *Id.* at 12.  This logic is equally applicable here.

24  Gemco, a corporation located in New Jersey and Bond, a corporation located in

25  California, are sophisticated parties.  Resolving any dispute between Bond or Gemco

26  by arbitration in Middlesex, New Jersey was negotiated at arms-length and agreed to

27  by Bond and Gemco pursuant to the plain meaning of Section 16 of Gemco's Terms

28  and Conditions.  Thus, any claims by Bond against Gemco must be arbitrated in

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

1  Middlesex, New Jersey.  See also *Sam Reisfeld & Son Import Co. v. S.A. Eteco* (5th

2  Cir. 1976) 530 F.2d 679, 681 (holding enforceable forum selection clauses in

3  arbitration agreements.)

4        H.     **In the Alternative, this Action Should Be Dismissed or Transferred**
   **to the U.S. District Court for the District of New Jersey.**

5

6        Bond's claims against Gemco must be arbitrated in Middlesex, New Jersey.

7  However, if this Court chooses not to decide whether to enforce the arbitration

8  provision pursuant to its terms, this Court should then dismiss this action because

9  venue in California is improper due to the parties' forum selection clause, or transfer it

10  to the U.S. District Court for the District of New Jersey so that the District Court in

11  New Jersey can decide whether to enforce the arbitration provision.  28 U.S.C. 1406

12  (a).  9 U.S.C. § 4 provides in pertinent part that "a party aggrieved by the alleged

13  failure, neglect, or refusal of another to arbitrate *may petition any United States*

14  *district court...*for an order directing that such arbitration proceed in the manner

15  provided for in such agreement (emphasis added)."  In the Ninth Circuit, a petition to

16  compel arbitration does not need to be filed in the forum designated in the arbitration

17  agreement as the place for the arbitration hearing.  *Textile Unlimited, Inc. v. A..BMH*

18  *& Co., Inc.* (9th Cir. 2001) 240 F.3d 781. 784.

19        In the event this Court elects not to decide whether Bond may be compelled to

20  arbitration in Middlesex, New Jersey, the plain meaning of 28 U.S.C. § 1406 (a),

21  provides this Court with authority to dismiss or transfer this matter to the U.S. District

22  Court for the District of New Jersey, which is an appropriate forum for this matter

23  because it at least complies with Bond and Gemco's intent to resolve any and all

24  disputes in New Jersey.  Thus, this action should be ordered to binding arbitration in

25  New Jersey, or alternatively, transferred to and decided by the U.S. District Court for

26  the District of New Jersey or dismissed under 28 U.S.C. § 1406 (a).

27  / / /

28  / / /

KNLH\503778.1

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

-12-

**4. CONCLUSION.**

For the foregoing reasons, Gemco respectfully requests that this Court order Bond to arbitrate its disputes with Gemco in New Jersey pursuant to federal law, the FAA and in accordance with their written agreement, or in the alternative, dismiss or transfer this action to U.S. District Court for the District of New Jersey.

DATED: January 3, 2008              KIRBY NOONAN LANCE & HOGE LLP


By:  /s/ Michael L. Kirby
     Michael L. Kirby
     mkirby@knlh.com
     Attorneys for Defendant GEMCO, INC.

KNLH\503778.1

-13-

CASE NO.: 07CV2400 IEG NLS

# EXHIBIT 1

Doc 1

## TERMS AND CONDITIONS:

1.  **GENERAL-** GEMCO Dryers and Blenders are manufactured for the purpose of processing free flowing powders.

2.  **DEFINITIONS-**
    *Buyer-*shall refer to the issuer of the purchase order, authorized representative of the end user and /or the end user.
    *Seller-* shall refer to the General Machine Company of New Jersey and/or GEMCO.

3.  **SHIPMENT-** All shipping dates and estimates are subject to: (i) the prior sale of equipment in inventory, Seller's manufacturing backlog, also any part thereof: (ii) causes beyond the Seller's reasonable control; acts of god, fires, floods, epidemics, riots, wars, priorities and acts of civil or military authority; (iii) strikes, labor difficulties and shortage of labor; (iv) delays in transportation, car shortages and shortages in fuel power, materials and supplies; (v) acts of the purchaser and receipt of all required information and/or materials from purchaser. and (vi) time is not of the essence.

    All shipments are expressed as weeks after receipt of order (ARO) and/or after Buyer approval (see section # 22). All weeks are five (5) working days each, excluding Seller's Holidays and vacation shut downs

4.  **WARRANTY-NEW EQUIPMENT-** The Seller warrants all equipment EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

    The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately.  This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done.  This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, improper installation or operating conditions in excess of design specifications as documented by the final proposal and/or engineering drawings issued by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization.  This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated in section 1 above.

    Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

    The Seller prior to work being performed must authorize all warranty service.

Exhibit 1
Page 14

Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initiated by the purchaser before an engineer or mechanic is scheduled.

**ITEMS NOT COVERED UNDER WARRANTY**- any wearable part such as, but not limited To seat rings bushings, o-rings, brake pads, etc.

Drive shafts, bearings, gears, reducers and any other parts worn or damaged due to miss alignment and/or improper installation by others, other than an authorized factory representative will not be covered under this warranty.

**REPAIRS**- should an in-warranty repair be necessary, in the judgment of the Seller and the equipment is impractical to return; the Seller will arrange for repairs by Seller's personnel or at Seller's option, subcontract to a qualified company. The Buyer will be expected to cooperate by making equipment available and accessible when the work is scheduled and is expected to provide the necessary utilities, equipment and assistance to facilitate repairs.

5.   **WAIVER AND MODIFICATION**- No waiver or modification of any of the Seller's terms and conditions shall be effective unless such waiver or modification is in writing and signed by an authorized representative at the office of the Seller in Middlesex, New Jersey.

6.   **INDEMNITY**- Buyer is responsible for and shall comply with all Local, Regional, State, Federal and International laws and regulations that govern the use of this type of equipment and its ancillary components. Buyer shall use and require its employees to use all safety devices, guards and proper safe operating procedures. Buyer shall not remove or modify any such device or guard or warning signs. Buyer will be responsible for maintaining an interlocked enclosure around the machinery. Buyer agrees to indemnify and save Seller harmless from any liability or obligation incurred by the Buyer to persons injured directly or indirectly in connection with the operation of such products.

7.   **TITLE**- Title for all parts and equipment ordered by the Buyer and risk of loss and/or damage shall pass to the Buyer upon delivery of parts and equipment to a carrier for shipment. The Buyer shall submit any claims for shortages or damages suffered in transit directly to the carrier. Also, Buyer shall notify the Seller of any damage(s) or shortage(s) within forty-eight (48) hours of receipt. Failure to notify Seller may void this warranty.

8.   **INSURANCE**- From date of shipment until the invoice is paid in full, purchaser agrees to provide and maintain at its expense, but for the Seller's benefit, insurance equal to the purchase price of the equipment against any loss or damage of any nature whatsoever.

9.   **PAYMENT TERMS**-
     *Established accounts*:
     a)  For orders under $25,000.00 our terms are net 30 days from shipment or upon notice that order is ready to ship.

     b)  For orders over $25,000.00 our terms are:
         Twenty percent (20%), due and payable after Seller accepts order, net 0.
         Forty percent (40%), due and payable six (6) weeks after order is accepted by Seller, net 30.
         Forty percent (40%), due and payable upon notice from Seller that the order is ready to ship, net 0.

Exhibit 1
Page 15

c) All payments are due upon receipt of invoice.
d) When deliveries are less than 12 weeks, payment schedules will be adjusted.
e) Based on Buyer's credit references, Seller reserves the right to modify payment terms.

*New accounts:*
Fifty percent (50%), due and payable after Seller accepts order, net 0.
Balance, due and payable upon notice from Seller that the order is ready to ship, net 0.
(All payments are due upon receipt of invoice.)

10.    **CHANGE ORDERS**- Any changes to Buyers original specifications which require additional engineering time, material and/or labor WILL result in delayed shipment and additional costs. No changes will be made without written authorization from the Buyer and/or a written change order to the original purchase order stating the nature of the change, price adder and new delivery.

11.    **PURCHASE ORDER CANCELLATIONS**- Should cancellation occur after a purchase order has been placed the following charges will apply according to the time of cancellation:
a. 1 to 10 days - 15%.
b. 11 to 30 days - 25%.
c. 31 to 60 days - 40% plus material.
d. 61 to 75 days - 55% plus material.
e. 76 days to 90 days - 75% plus material.
f. 90 days and over - 100%.

12.    **INSPECTIONS**- The Buyer is encouraged to inspect and/or witness mechanical testing of the equipment, especially when changes have been made to the original specification and/or it is impractical to return equipment for possible warranty claims, as outlined in Sections 4, 6, and 15. All written, mechanical specifications are inspected.

13.    **SPECIFICATIONS**- If the Seller submits any drawings and/or specifications for approval, the Buyer is required to approve or disapprove the drawings and/or specifications within the time frame as specified on the Sellers Engineering Drawing Transmittal Sheet. The Seller reserves the right to re-schedule production or to consider the order cancelled after ten (10) Days from the specified drawing return date if drawings are not returned. Cancelled orders are subject to fees as described in paragraph 13.

14.    **RETURNS**- Permission to return any parts or equipment must be in writing and must be returned with transportation costs prepaid. In the event equipment or parts manufactured by the Seller are returned, the obligation of the Seller is limited to repairing or replacing parts which, upon Seller's examination, are found to be defective in either material or workmanship. The Seller will pay no transportation charges, unless the Seller gives priors written approval for transportation charges.

15.    **PRICING**-
All proposal prices are firm for thirty (30) days and subject to review after 30 days, unless otherwise noted.

16.    **REMEDIES**- In the event of a dispute between Seller and Buyer, any and all disputes shall be resolved by arbitration, in the State of New Jersey, in the County of Middlesex. In no event shall the Seller be liable for special, incidental and/or consequential damages incurred; including, without limitation, lost profits.

Exhibit 1
Page 16

17. **ENTIRE AGREEMENT**- The terms and conditions set forth herein, including all specification, drawings and other documents, expressly referred to in this proposal (order), contain the entire agreement between the Buyer and Seller and supersede all prior negotiations, agreements, understandings or arrangements between the Buyer and Seller with respect to the subject matter hereof.

18. **INTELLECTUAL PROPERTY** - All drawings, manuals, sketches, calculations, designs, promotional materials, video tapes, computer files and any other intellectual property conveyed to Buyer in whatever manner in conjunction with the equipment provided under this agreement, are and remain the property of Seller. There is no assignment of any rights to such material whatsoever.

19. **APPLICABLE LAWS.** This agreement shall be construed and interpreted in accordance with The laws of the State of New Jersey.

20. **REFURBISHED EQUIPMENT**- the Seller warrants all NEW parts EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

21. The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately. This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done. This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, or pressures in excess of limits shown as operating conditions by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization. This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated in section 1. Above. Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

The Seller, prior to work being performed must authorize all warranty service.
Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initiated by the purchaser before an engineer or mechanic is scheduled.

All existing parts EXPRESSLY MANUFACTURED BY THE SELLER are warranted for 90 days. Any other parts are NOT warranted.

22. **ORDER CLASSIFICATIONS** – (All orders are subject to acceptance by Seller and credit approval of Buyer)

**ALL ORDERS ARE ACCEPTED BY GEMCO AS CERTIFIED:**

Exhibit 1
Page 17

Certified shall mean that the Buyer has issued a purchase order, in writing, based on the sell price, completion date (expressed as weeks ARO), terms and conditions. Gemco will initiate all phases of engineering, purchasing, manufacturing and issue "certified' drawings for the equipment being built.

**APPROVAL ORDERS – WHEN REQUESTED BY THE BUYER:**
Approval shall mean that the Buyer has issued a purchase order based on the sell price, terms and conditions proposed and completion date (expressed as weeks after "customer approval" of drawings). Gemco typically issues "approval" drawings 2-4 weeks ARO.
However, purchasing of material and manufacturing will NOT proceed until AFTER Buyer approves drawings and/or both the Buyer and GEMCO accept changes. The Buyer may authorize, in writing, certain items as certified to proceed with purchasing and manufacturing to expedite delivery.

Please note: the Buyer must authorize ALL requested changes in writing. Changes that affect price and/or delivery require a change order(s) to the original purchase order from the Buyer.

23.  **INSTALLATION and CLEANING**-The Buyer is responsible for the rigging, installation, alignment and utility connections of the purchased equipment. The Seller does not certify the equipment to be clean for Buyer's production purposes. Further, the Buyer is responsible for cleaning and removing materials used by the Seller, in the normal course of manufacturing equipment, to meet Buyer's process requirements. Unless, specified all units are NOT passivated.

All equipment is manufactured to United States Standards. Any standards required specifically for the equipment destination must be communicated to Gemco prior to acceptance of order. Such standards may result in an additional cost.

Exhibit 1
Page 18

# EXHIBIT 2



## Bond Laboratories, Inc.

777 S Highway 101,
Suite 215
Solana Beach, CA 92075

Phone: 858-847-9000
Fax 858-847-9090

## Purchase Order

**Bill To:**

777 S. Highway 101 Suite 215
Solana Beach, CA 92075

**Ship To:**

38340 'H' Innovation Court Unit 803
Murrieta, CA 92562

Purchase Order # E111806
Date: 08/11/06
Vendor ID: Gemco

| Req By | Ship When | Ship Via | Date | Buyer | Terms | Tax ID |
|---|---|---|---|---|---|---|
| SDL | When Ready | Purchaser to arrange | 8/11/06 | TK | 50% when accepted/50% WR | 20-3484383 |

| Quantity | Item | Units | Description | Discount % | Taxable | Unit Price | Total |
|---|---|---|---|---|---|---|---|
| 1 | | | LIQUID-SOLIDS AGITATOR MODEL DIRECT-DRIVE PORTABLE BLENDER | | | $75,758.00 | $75,758.00 |
| | | | | | | | $.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | Subtotal | $75,758.00 |
| | | | | | | Tax | |
| | | | | | | Shipping | |
| | | | | | | Miscellaneous | |
| | | | | | | Balance Due | |

Exhibit 2
Page 19

1  Michael L. Kirby (50895)
      mkirby@knlh.com
2  Malcolm B. Roberts (242431)
      mroberts@knlh.com
3  **KIRBY NOONAN LANCE & HOGE LLP**
   600 West Broadway, Suite 1100
4  San Diego, California 92101-3387
   Telephone (619) 231-8666
5  Facsimile (619) 231-9593

6  Attorneys for Defendant GEMCO, INC. a New Jersey corporation

7

8                     **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  BOND LABORATORIES, INC., a          CASE NO.: 07CV2400 IEG NLS
    California corporation,
12                                      **DECLARATION OF ALICIA JOHN IN**
                  Plaintiff,            **SUPPORT OF MOTION TO COMPEL**
13                                      **ARBITRATION**
         vs.
14                                      Date:    February 25, 2008
    GEMCO, INC., a New Jersey           Time:    10:30 a.m.
15  corporation, and DOES 1-10, inclusive,   Judge:   The Hon. Irma E. Gonzalez
                                        Crtrm:   1
16                Defendant.

17

18       I, ALICIA JOHN, declare as follows:

19       1.       I am over the age of eighteen and am an employee of Gemco, Inc.,

20  ("Gemco") which is located at 301 Smalley Avenue, Middlesex, New Jersey. I am

21  competent to and would testify to all matters set forth in this Declaration if called upon

22  to do so as a witness.

23       2.       I have worked for Gemco for approximately 14 years.

24       3.       As a Gemco employee, one of my duties entails writing letters to Gemco

25  customers to advise them of the terms and conditions of their purchase and several

26  important pieces of information about their product. The standard Gemco letter which

27  I regularly send out includes the terms and conditions of the sale, such as (1) the total

28  price of the product; (2) the terms of payment (50% after Gemco accepts the order);

(3) the scheduled shipment date to the customer; (4) Gemco's job number, and (5) the printed standard TERMS AND CONDITIONS, which includes an arbitration provision in paragraph 16 thereof.

4.      It is Gemco's custom and practice to send a letter with the attached TERMS AND CONDITIONS of each purchase order to all customers that order or purchase Gemco products. I have sent many such letters for Gemco.

5.      Bond Laboratories, Inc. purchased from Gemco one (1) 5 CF slant Cone Liq/Sol Agitator Portable, per Gemco proposal number 060814-01 (the "Blender").

6.      On August 17, 2006, I sent a letter with the attached TERMS AND CONDITIONS via U.S. mail addressed to Bond Laboratories at 38340 "H" Innovation Court Unit 803, Murrieta, CA 92562. A true copy of my August 17, 2006 letter is attached hereto as Exhibit A. Among other things, my letter included the total purchase price, terms of payment, scheduled shipment date and a job number.

7.      My August 17, 2006 letter to Bond Laboratories noted in the fifth paragraph thereof that "The attached terms and conditions are part of this order." Attached hereto as Exhibit B is a true copy of the Gemco TERMS AND CONDITIONS which would have been included in my August 17, 2006 letter to Bond Laboratories.

8.      Gemco does not have any correspondence or other communication from Bond Laboratories indicating that it did not receive the letter I sent on August 17, 2006 which included the terms and conditions of the purchase order. Based on my experience, a customer such as Bond Laboratories would have to receive such a letter from Gemco or the customer would not know the purchase price, terms or estimated delivery date of the product. All or most of Gemco's customers want this information before sending Gemco the initial payment for their order.

/ / /

/ / /

/ / /

/ / /

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

1     I declare under penalty of perjury under the laws of the State of New Jersey

2    and the United States of America that the foregoing is true and correct and that this

3    Declaration was executed on December 19, 2007 at Middlesex, New Jersey.

4

5

Alicia John

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH502924.1

# EXHIBIT A

Thursday, August 17, 2006

**GEMCO** ®
301 SMALLEY AVENUE
MIDDLESEX, NJ 08846-2269
(732) 752-7900  FAX (732) 752-6857
1-800 OK GEMCO
www.okgemco.com
E-Mail: sales@okgemco.com

Bond Laboratories
38340 "H" Innovation Court Unit 803
Murrieta, CA 92562
Phone: (858) 847-9000

Dear Mr. Robery Kay,

Thank you for your purchase order number B111806 calling for one (1) 5 CF slant Cone Liq/Sol Agitator Portable, per Gemco proposal number 060814-01.

The total price for this machine is $75,758.00 FOB Middlesex, New Jersey.

Note: All prices are in US Dollars.

Modifications and/or revisions to the original order, resulting in price changes will be included in the next scheduled invoice.

The attached terms and conditions are part of this order. If not attached, please contact GEMCO [1-800-OK-GEMCO] for additional copies of our terms and conditions.

Terms of payment are as follows:

  Fifty percent (50%), due and payable after order is accepted by seller, net 0.

  Fifty percent (50%), due and payable upon notice from seller that the order is ready to ship, net 30.

All invoices are due upon receipt. Please ensure timely payment of invoices in order to avoid delivery delays.

Shipment for your machine has been scheduled under our job number 26588 and is scheduled for shipment for the week ending 11/30/2006 .

We sincerely appreciate this opportunity to be of service to you. If you have any questions or require additional information, please contact me at 732-752-7900 ext. 344.

Sincerely,

Alicia John, Gemco

Exhibit A
Page 4

# EXHIBIT B

Doc 1

## TERMS AND CONDITIONS:

1. **GENERAL-** GEMCO Dryers and Blenders are manufactured for the purpose of processing free flowing powders.

2. **DEFINITIONS-**
   *Buyer*-shall refer to the issuer of the purchase order, authorized representative of the end user and /or the end user.
   *Seller*- shall refer to the General Machine Company of New Jersey and/or GEMCO.

3. **SHIPMENT-** All shipping dates and estimates are subject to: (i) the prior sale of equipment in inventory, Seller's manufacturing backlog, also any part thereof: (ii) causes beyond the Seller's reasonable control; acts of god, fires, floods, epidemics, riots, wars, priorities and acts of civil or military authority; (iii) strikes, labor difficulties and shortage of labor; (iv) delays in transportation, car shortages and shortages in fuel power, materials and supplies; (v) acts of the purchaser and receipt of all required information and/or materials from purchaser, and (vi) time is not of the essence.

   All shipments are expressed as weeks after receipt of order (ARO) and/or after Buyer approval (see section # 22). All weeks are five (5) working days each, excluding Seller's Holidays and vacation shut downs

4. **WARRANTY-NEW EQUIPMENT-** The Seller warrants all equipment EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

   The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately. This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done. This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, improper installation or operating conditions in excess of design specifications as documented by the final proposal and/or engineering drawings issued by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization. This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated in section 1 above.

   Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

   The Seller prior to work being performed must authorize all warranty service.

Exhibit B
Page 5

Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initiated by the purchaser before an engineer or mechanic is scheduled.

**ITEMS NOT COVERED UNDER WARRANTY**- any wearable part such as, but not limited To seat rings bushings, o-rings, brake pads, etc.

Drive shafts, bearings, gears, reducers and any other parts worn or damaged due to miss alignment and/or improper installation by others, other than an authorized factory representative will not be covered under this warranty.

**REPAIRS**- should an in-warranty repair be necessary, in the judgment of the Seller and the equipment is impractical to return; the Seller will arrange for repairs by Seller's personnel or at Seller's option, subcontract to a qualified company. The Buyer will be expected to cooperate by making equipment available and accessible when the work is scheduled and is expected to provide the necessary utilities, equipment and assistance to facilitate repairs.

5.   **WAIVER AND MODIFICATION**- No waiver or modification of any of the Seller's terms and conditions shall be effective unless such waiver or modification is in writing and signed by an authorized representative at the office of the Seller in Middlesex, New Jersey.

6.   **INDEMNITY**- Buyer is responsible for and shall comply with all Local, Regional, State, Federal and International laws and regulations that govern the use of this type of equipment and its ancillary components. Buyer shall use and require its employees to use all safety devices, guards and proper safe operating procedures. Buyer shall not remove or modify any such device or guard or warning signs. Buyer will be responsible for maintaining an interlocked enclosure around the machinery. Buyer agrees to indemnify and save Seller harmless from any liability or obligation incurred by the Buyer to persons injured directly or indirectly in connection with the operation of such products.

7.   **TITLE**- Title for all parts and equipment ordered by the Buyer and risk of loss and/or damage shall pass to the Buyer upon delivery of parts and equipment to a carrier for shipment. The Buyer shall submit any claims for shortages or damages suffered in transit directly to the carrier. Also, Buyer shall notify the Seller of any damage(s) or shortage(s) within forty-eight (48) hours of receipt. Failure to notify Seller may void this warranty.

8.   **INSURANCE**- From date of shipment until the invoice is paid in full, purchaser agrees to provide and maintain at its expense, but for the Seller's benefit, insurance equal to the purchase price of the equipment against any loss or damage of any nature whatsoever.

9.   **PAYMENT TERMS**-
     *Established accounts*:
     a)   For orders under $25,000.00 our terms are net 30 days from shipment or upon notice that order is ready to ship.

     b)   For orders over $25,000.00 our terms are:
          Twenty percent (20%), due and payable after Seller accepts order, net 0.
          Forty percent (40%), due and payable six (6) weeks after order is accepted by Seller, net 30.
          Forty percent (40%), due and payable upon notice from Seller that the order is ready to ship, net 0.

c) All payments are due upon receipt of invoice.
d) When deliveries are less than 12 weeks, payment schedules will be adjusted.
e) Based on Buyer's credit references, Seller reserves the right to modify payment terms.

*New accounts*:
Fifty percent (50%), due and payable after Seller accepts order, net 0.
Balance, due and payable upon notice from Seller that the order is ready to ship, net 0.
(All payments are due upon receipt of invoice.)

10. **CHANGE ORDERS**- Any changes to Buyers original specifications which require additional engineering time, material and/or labor WILL result in delayed shipment and additional costs. No changes will be made without written authorization from the Buyer and/or a written change order to the original purchase order stating the nature of the change, price adder and new delivery.

11. **PURCHASE ORDER CANCELLATIONS**- Should cancellation occur after a purchase order has been placed the following charges will apply according to the time of cancellation:
   a. 1 to 10 days - 15%.
   b. 11 to 30 days - 25%.
   c. 31 to 60 days - 40% plus material.
   d. 61 to 75 days - 55% plus material.
   e. 76 days to 90 days - 75% plus material.
   f. 90 days and over - 100%.

12. **INSPECTIONS**- The Buyer is encouraged to inspect and/or witness mechanical testing of the equipment, especially when changes have been made to the original specification and/or it is impractical to return equipment for possible warranty claims, as outlined in Sections 4, 6, and 15. All written, mechanical specifications are inspected.

13. **SPECIFICATIONS**- If the Seller submits any drawings and/or specifications for approval, the Buyer is required to approve or disapprove the drawings and/or specifications within the time frame as specified on the Sellers Engineering Drawing Transmittal Sheet. The Seller reserves the right to re-schedule production or to consider the order cancelled after ten (10) Days from the specified drawing return date if drawings are not returned. Cancelled orders are subject to fees as described in paragraph 13.

14. **RETURNS**- Permission to return any parts or equipment must be in writing and must be returned with transportation costs prepaid. In the event equipment or parts manufactured by the Seller are returned, the obligation of the Seller is limited to repairing or replacing parts which, upon Seller's examination, are found to be defective in either material or workmanship. The Seller will pay no transportation charges, unless the Seller gives priors written approval for transportation charges.

15. **PRICING**-
All proposal prices are firm for thirty (30) days and subject to review after 30 days, unless otherwise noted.

16. **REMEDIES**- In the event of a dispute between Seller and Buyer, any and all disputes shall be resolved by arbitration, in the State of New Jersey, in the County of Middlesex. In no event shall the Seller be liable for special, incidental and/or consequential damages incurred; including, without limitation, lost profits.

17.  **ENTIRE AGREEMENT**- The terms and conditions set forth herein, including all specification, drawings and other documents, expressly referred to in this proposal (order), contain the entire agreement between the Buyer and Seller and supersede all prior negotiations, agreements, understandings or arrangements between the Buyer and Seller with respect to the subject matter hereof.

18.  **INTELLECTUAL PROPERTY** - All drawings, manuals, sketches, calculations, designs, promotional materials, video tapes, computer files and any other intellectual property conveyed to Buyer in whatever manner in conjunction with the equipment provided under this agreement, are and remain the property of Seller.  There is no assignment of any rights to such material whatsoever.

19.  **APPLICABLE LAWS.**  This agreement shall be construed and interpreted in accordance with The laws of the State of New Jersey.

20.  **REFURBISHED EQUIPMENT**- the Seller warrants all NEW parts EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

21.  The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately.  This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done.  This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, or pressures in excess of limits shown as operating conditions by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization.  This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated in section 1. Above. Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

The Seller, prior to work being performed must authorize all warranty service.
Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initiated by the purchaser before an engineer or mechanic is scheduled.

All existing parts EXPRESSLY MANUFACTURED BY THE SELLER are warranted for 90 days. Any other parts are NOT warranted.

22.  **ORDER CLASSIFICATIONS** – (All orders are subject to acceptance by Seller and credit approval of Buyer)

**ALL ORDERS ARE ACCEPTED BY GEMCO AS CERTIFIED:**

Certified shall mean that the Buyer has issued a purchase order, in writing, based on the sell price, completion date (expressed as weeks ARO), terms and conditions. Gemco will initiate all phases of engineering, purchasing, manufacturing and issue "certified" drawings for the equipment being built.

**APPROVAL ORDERS – WHEN REQUESTED BY THE BUYER:**
Approval shall mean that the Buyer has issued a purchase order based on the sell price, terms and conditions proposed and completion date (expressed as weeks after "customer approval" of drawings). Gemco typically issues "approval" drawings 2-4 weeks ARO.
However, purchasing of material and manufacturing will NOT proceed until AFTER Buyer approves drawings and/or both the Buyer and GEMCO accept changes. The Buyer may authorize, in writing, certain items as certified to proceed with purchasing and manufacturing to expedite delivery.

Please note: the Buyer must authorize ALL requested changes in writing. Changes that affect price and/or delivery require a change order(s) to the original purchase order from the Buyer.

23.    **INSTALLATION and CLEANING**-The Buyer is responsible for the rigging, installation, alignment and utility connections of the purchased equipment. The Seller does not certify the equipment to be clean for Buyer's production purposes. Further, the Buyer is responsible for cleaning and removing materials used by the Seller, in the normal course of manufacturing equipment, to meet Buyer's process requirements. Unless, specified all units are NOT passivated.

All equipment is manufactured to United States Standards. Any standards required specifically for the equipment destination must be communicated to Gemco prior to acceptance of order. Such standards may result in an additional cost.

Exhibit B
Page 9

# PROOF OF SERVICE

| | |
|---|---|
| DATE: | Feburary 25, 2008 |
| TIME: | 10:30 a.m. |
| DEPT: | 1 |
| JUDGE: | Hon. Irma E. Gonzalez |

Bond Laboratories, Inc. v. Gemco, Inc.
United States District Court Case No. 07CV2400 IEG NLS

I, the undersigned, declare: That I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 600 West Broadway, Suite 1100, San Diego, California 92101-3387.

On January 3, 2008, at San Diego, California, I served the following document(s) described as **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION IN NEW JERSEY, OR ALTERNATIVELY, TO DISMISS OR TRANSFER FOR IMPROPER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION IN NEW JERSEY, OR ALTERNATIVELY, TO DISMISS OR TRANSFER FOR IMPROPER VENUE; DECLARATION OF ALICIA JOHN IN SUPPORT OF MOTION TO COMPEL ARBITRATION** on the parties in said action as follows:

## SEE ATTACHED LIST

☒ **ELECTRONIC TRANSMISSION:** I filed the foregoing document with the Clerk of Court for the United States District Court, using the Electronic Case Filing ("ECF") system of the Court. The attorney listed above has consented to receive service by electronic means and is registered with the Court's ECF system and was served a "Notice of Electronic Filing" sent by ECF system.

☒ **FEDERAL COURT:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 3, 2008, at San Diego, California.

/s/ Stacy L Ratti

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California 92101-3387

KNLH\504124.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
**Bond Labs v. GemCo, Inc.**
**Case No. 37-2007-00073124-CL-BC-CTL**

Micha Danzig (177923)                          Attorneys for Plaintiff Bond Laboratories,
Juan C. Castafieda (240705)              Inc.
Mintz Levin Cohn Ferris Glovensky &
    Popeo, PC
5355 Mira Sorrento Place, Suite 600
San Diego, CA  92121
Telephone: 858-320-3000
Facsimile: 858-320-3001

Kirby Noonan Lance & Hoge LLP
600 West Broadway, Suite 1100 San Diego, California  92101-3387

KNLH\504124.1

-2-

PROOF OF SERVICE