1 Micha Danzig (177923)
mdanzig@mintz.com
2 Juan C. Castañeda (240705)
jccastaneda@Mintz.com
3 Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
5355 Mira Sorrento Place, Suite 600
4 San Diego, CA  92121
Telephone:  858-320-3000
5 Facsimile:  858-320-3001

6 Attorneys for Plaintiff,
BOND LABORATORIES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOND LABORATORIES, INC., a California corporation,<br><br>                              Plaintiff,<br><br>       v.<br><br>GEMCO, INC., a New Jersey corporation, and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No.: 07CV2400 IEF NLS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GEMCO'S MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE<br><br>Date:   February 25, 2008<br>Time:   10:30 a.m.<br>Judge:  The Hon. Irma E. Gonzalez<br>Crtrm:  1 |

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF PERTINANT FACTS ...........................................................2

III. ARGUMENT .......................................................................................................5

    A.   NO AGREEMENT TO ARBITRATE EXISTS BETWEEN BOND AND GEMCO ................................................................................................6

    B.   Any Purported Arbitration Agreement is Unconscionable ...................9

        1.   Procedural Unconscionability ......................................................9

        2.   Substantive Unconscionability ...................................................10

    C.   California Public Policy Favors Resolving Disputes Locally .............11

IV.  CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Federal Cases**

*Bailey v. U.S.*,
    642 F.2d 344 (9th Cir. 1981) ............................................................................................. 8

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996) ......................................................................................................... 6

*Drazan v. United States*,
    762 F.2d 56 (7th Cir. 1985) ............................................................................................. 8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ......................................................................................................... 6

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ......................................................................................... 6

*Schikore v. BankAmerica Supplemental Retirement Plan*,
    269 F.3d 956 (9th Cir. 2001) ........................................................................................... 8

*Whiteside v. Teltech Corp.*,
    940 F.2d 99 (4th Cir. 1991) ............................................................................................. 6

**Federal Statutes & Administrative Codes**

9 U.S.C. § 2 ................................................................................................................................. 6

**State Cases**

*American Building Maintenance Co. v. Indemnity Ins. Co.*,
    214 Cal. 608 (1932) ......................................................................................................... 6

*Aral v. Earthlink, Inc.*,
    134 Cal. App. 4th 544 (2005) ........................................................................................ 11

*Armendariz v. Foundation Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000) ....................................................................................................... 9

*Balandran v. Labor Ready, Inc.*,
    124 Cal. App. 4th 1522 (2004) ........................................................................................ 6

*Commercial Factors v. Kurtzman Bros.*,
    131 Cal. App. 2d 133 (1955) ........................................................................................... 7

*Discover Bank v. Superior Court (2005)*,
    36 Cal. 4th 148 ................................................................................................................. 9

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001) ......................................................................................... 10

*Graham v. Scissor-Tail, Inc.*,
    28 Cal. 3d 807 (1981) .................................................................................................... 10

1 | *Kinney v. United Healthcare Services, Inc.*,
         70 Cal. App. 4th 1322 (1999) ...................................................................................10

*Lawrence v. Walzer & Gabrielson*,
         207 Cal. App. 3d 1501 (1989) .....................................................................................7

*Lee v. Southern California University for Professional Studies*,
         148 Cal. App. 4th 782 (2007) ......................................................................................7

*Little v. Auto Stiegler, Inc.*,
         29 Cal. 4th 1064 (2003) ..........................................................................................9, 10

*Patterson v. ITT Consumer Fin. Corp.*,
         14 Cal. App. 4th 1659 (1993) ....................................................................................10

*Price v. Atchison, T. & S. F. Ry. Co.*,
         42 Cal. 2d 577 (1954) ................................................................................................11

*Smith v. Superior Court of L.A.*,
         17 Cal. 3d 491 (1976) ................................................................................................11

*Steven v. Fidelity & Casualty Co.*,
         58 Cal. 2d 862 (1962) ..................................................................................................6

*Thomson v. Continental Ins. Co.*,
         66 Cal. 2d 738 (1967) ................................................................................................11

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
         25 Cal. App. 3d 987 (1972) .........................................................................................7

**State Statutes & Administrative Codes**

Cal. Civ. Code § 1550..........................................................................................................6

Cal. Civ. Code § 1585 (As )................................................................................................6

Cal. Civ. Code § 1670.5......................................................................................................9

Plaintiff Bond Laboratories, Inc. ("Bond") submits this memorandum of points and authorities in opposition to Defendant Gemco, Inc.'s ("Gemco") Motion to Compel Arbitration or to Dismiss For Improper Venue.

## I.     INTRODUCTION

For the past year, Bond, a company located in California, has been trying to obtain a refund or return authorization for a defective commercial Blender that it purchased from Gemco, a New Jersey company. Rather than attempt to remedy the effects of its defective blender, Gemco has brought this motion to compel arbitration to force Bond to resolve its dispute *across the country* in New Jersey. However, Gemco's motion to compel arbitration should be summarily denied since **no such arbitration agreement exists**.

The facts show that Gemco has failed to demonstrate any facts showing Bond's receipt, knowledge of and acceptance to Gemco's arbitration provisions, let alone, the existence of any enforceable arbitration agreement with Bond. Instead, the facts demonstrate that Gemco's arbitration provision was never part of the parties' negotiations and only surfaced as part of a terms and conditions document (that included limited liability language) attached to a letter that Bond did not receive, which was unilaterally, and without prior request or notice, *perhaps* sent to an warehouse that Bond did not occupy at the time. Gemco addressed this letter to be sent to Bond's *future* warehouse despite having knowledge at that time of Bond's correct billing address and headquarters and only dealing with Bond employees at its headquarters and billing address. Moreover, even assuming Gemco actually mailed this letter and the terms and conditions document, it was mailed (to the wrong location) only *after* Bond had placed its purchase order for the commercial blender and deposited with Gemco 50% of the $75,756 purchase price. As a result, Gemco cannot point to any consent on the part of Bond to waive its rights to litigate its California related disputes in a California court of law.

Moreover, even assuming (for the sake of argument) that such an agreement to arbitrate exists, the Court should not reward Gemco by enforcing an arbitration agreement fraught with unconscionability. The facts are clear that Bond never had an opportunity to negotiate, or even read the arbitration clause, let alone knowingly waive its rights to pursue its claims against Gemco in a

1  judicial forum in California. As a result, Bond was faced with no "meaningful choice" to reject the
2  "surprise" provisions found therein, since the terms were unilaterally sent to Bond **after** it agreed to
3  purchase the Blender from Gemco and after it paid a 50% deposit. Not only is Gemco's terms and
4  conditions document procedurally unconscionable, but without proof of a knowing acceptance by
5  Bond, the terms found within it, (a) requiring a company such as Bond, with its principal place of
6  business in California, to arbitrate in New Jersey (using New Jersey law) its disputes over a product
7  it negotiated primarily with Gemco's California representative and then purchased for shipment to
8  California; and (b) limiting Bond's remedies under the contract to the purchase price of the Blender,
9  are so one-sided as to be substantively unconscionable.

10     Aside from basic contractual reasons for denying Gemco's motion to compel arbitration, it is
11 abundantly clear that the strong public policy of the state of California favors the protection of
12 California residents and their ability to seek redress for wrongs in California. This should be
13 especially true when a non-California company reaches out to do business in California, incurs
14 handsome revenue from such activity and in the process sells a defective product which it refuses to
15 stand by. It would be unquestionably unfair to force Bond, a company located in California, to
16 travel across the country to fix what Gemco has left broken. As a consequence of all of the above,
17 Gemco's overreaching motion must be denied.

## II.    STATEMENT OF PERTINANT FACTS

19     In August 2006, Plaintiff Bond was gearing up to begin manufacturing nutraceutical
20 products, including nutritional sports drinks. [*See* Declaration of Scott Landow ("Landow Decl.), ¶
21 2.] As a start-up, Bond had a short window of opportunity for which to go from conception,
22 manufacturing, and then to distribution of its nutraceutical products. [Landow Decl., ¶ 3.] To
23 accomplish this goal, in early August 2006, Bond sought to purchase a high quality industrial
24 blender known as a Liquid-Solids Agitator Model Direct-Drive Portable Blender ("Blender"), from
25 Defendant Gemco for delivery in late December 2006 and for a planned distribution of its nutritional
26 sports drinks products at the start of 2007. [Landow Decl., ¶ 4.]

27     During the first week of August 2006, Bond representatives contacted a California sales
28 representative for Gemco, Steve Lutes ("Mr. Lutes"). [Landow Decl., ¶ 5.] During several

1  conversations with Mr. Lutes (conducted from Bond's headquarters in Solana Beach), Bond was
2  informed that the purchase price for the Blender would be $75,756.  [Landow Decl., ¶ 6.]  Bond was
3  also repeatedly assured by Mr. Lutes that Gemco would timely deliver a high quality Blender in
4  December 2006 that would meet all of Bond's manufacturing needs.  [Landow Decl., ¶ 7.]  Mr.
5  Lutes was told that Bond would only be able to begin manufacturing its nutraceutical products after
6  it received a fully functional Blender from Gemco.  [Landow Decl., ¶ 8.]  Furthermore, Mr. Lutes
7  knew Bond would be delayed in going to market with its nutritional sports drinks products until it
8  received the promised Blender from Gemco.  [Landow Decl., ¶ 9.]  At no time during these
9  conversations was Bond informed of, or shown a "terms and conditions" form showing that any
10 dispute between Bond and Gemco would be subject to arbitration in New Jersey and under New
11 Jersey law.  [Landow Decl., ¶ 10.]  Had Bond known of such a term (or of Gemco's supposed
12 limitation of liability provision), it would have renegotiated the purchase of the Blender to ensure
13 that disputes were litigated in California.  [Landow Decl., ¶ 11.]

14      Based on these conversations, Bond was convinced that Gemco would deliver a high quality
15 Blender, as promised.  [Landow Decl., ¶ 12.]  Thus, on or about August 11, 2006, Bond informed
16 Gemco's representative that it wished to order the Blender.  [Landow Decl., ¶ 13.]  In response, on
17 August 15, 2006, Crystal Basiluk, a member of Gemco's Capital Sales, sent an email (copying Bob
18 Zangara and Alicia John[1]) confirming receipt of Bond's bank name and number and requesting
19 credit references and a bank account reference in order to "run your credit and accept your purchase
20 order."  [Landow Decl., ¶ 14, Exhibit A, Emails between Crystal Basiluk and Scott Landow dated
21 August 15, 2006.]  Later that morning, Scott Landow responded with the requested information and
22 confirmed his "understanding that we are going to be putting 50% up front" and, emphasizing the
23 compressed manufacturing timeline, reaffirmed that "We don't want to lose any time."  [Landow
24 Decl., ¶ 14, Exhibit A.[2] ]  In response to Mr. Landow's email, Ms. Basiluk emailed back later that
25 day letting Mr. Landow know that he could "wire transfer the 50%" deposit and then wire "the last
26
27 [1] Mr. Zangara is Gemco's President and Ms. John is a Gemco employee whose declaration was filed with Gemco's opening brief.
28 [2]     Clearly evident on Mr. Landow's email was his company contact information, which listed Bond's address as: **777 S. Hwy 101, Suite 215, Solana Beach, CA 92075**.

3

1  50%" before shipment. [Landow Decl., ¶ 14, Exhibit A.]  Based on these conversations and because

2  of Bond's timeframe for manufacturing, Bond quickly wired the 50% deposit on August 17, 2006.

3  [Landow Decl., ¶ 15.]

4  That same day of August 17, 2006, Bond faxed a formal purchase order ("Order") to Gemco

5  for a Blender in the amount of $75,756.  [Landow Decl., ¶ 16, Exhibit B, Order.]  This Order made it

6  clear, **in two places**, that Bond's address for correspondence and billing purposes was: **777 S.**

7  **Highway 101, Suite 215, Solana Beach, CA 92075**.  Based on Gemco's estimated timeframe for

8  delivery in December 2006, Bond's Order also made it clear that the Blender was to be shipped to

9  Bond's *yet to be occupied*[3] warehouse located at: 38340 H Innovation Court Unit 803, Murrieta, CA

10  92562.  Bond identified the warehouse location (which was set to be occupied in September 2006) as

11  the shipping location for the Blender precisely because Gemco had represented that the Blender

12  would only be ready for delivery in December 2006.  [Landow Decl., ¶ 18.]

13  Despite Bond clearly identifying its' billing and correspondence address in Solana Beach

14  during all of its dealings with Gemco, *including in the Order* it sent on August 17, 2006, on that

15  same day, Ms. Alicia John for some reason addressed[4] a letter to Bond at its not yet occupied

16  Murrieta warehouse.  [Landow Decl., ¶ 19, Exhibit D, Letter from Alicia John to Dr. Robery (sic)

17  Kay dated August 17, 2006.]  This letter confirmed Bond's previously emailed and faxed Order and,

18  according to Ms. John's Declaration, "would have included" a five page Terms and Conditions sheet

19  ("Terms Sheet") that set forth, **for the first time**: (a) Gemco's limited warranty; (b) Buyer's duty to

20  indemnify Gemco; (c) Gemco's payment terms; (d) purchase order cancellations terms; (e) Gemco's

21  return policy; (f) Gemco's remedies, *requiring all disputes resolved by arbitration in New Jersey*

22  and *limiting Gemco's liability* to exclude special, incidental, consequential damages and lost profits;

23  and (g) construing the agreement according to the laws of New Jersey.

24

25  [3] At the time, Bond had just entered into a new lease for a warehouse where the manufacturing of its nutraceutical products would take place.  Under the lease, this warehouse was only going to be occupied by Bond in September 2006.  [Landow Decl., ¶ 17, Exhibit C, Warehouse Lease.]

26

27  [4] It is unclear whether this letter was sent at all since Ms. Alicia John's declaration fails to confirm that the letter was actually mailed, let alone delivered.  What is clear is that this letter, even if it was mailed, was not sent via registered mail, lacked any form of certificate of mailing, including:

28  delivery confirmation, signature confirmation, or return receipt and it would have gone to an empty building.

4

Because Gemco failed to mail this Terms Sheet to Bond's office, Bond did not receive this Terms Sheet on or near August 17, 2006 (or at any time before it had fully paid for the Blender). [Landow Decl., ¶ 20.] As such, Bond proceeded with the Order based on Gemco's past representations, which *never* mentioned the remedies requirement set forth in the Terms Sheet. [Landow Decl., ¶ 20.] Bond further followed the parties' understood terms, by paying the remaining balance on December 5, 2006, prior to shipment of the Blender by Gemco on December 20, 2006. [Landow Decl., ¶ 21.]

Unfortunately, the Blender was defective in multiple respects and, despite numerous attempts to repair the Blender and despite repeated correspondence from Bond, Gemco has refused to refund the purchase price of the Blender or provide Bond with a return authorization, citing the "warranty" in Gemco's unilaterally made and never received Terms Sheet. As a result, on August 15, 2007, Bond was forced to file a complaint in Superior Court of the State of California, San Diego County, alleging claims for breach of contract and breach of implied covenant of fair dealing. Following receipt of the complaint and pursuant to a stipulation, service of the Summons and Complaint took place on December 11, 2007. Gemco then filed a Notice of Removal of Action to the United States District Court, Southern District of California, on December 21, 2007 and subsequently brought this Motion to Compel Arbitration in New Jersey on January 3, 2008, based on the unilaterally made and never received Terms Sheet.

### III.   ARGUMENT

Bond can not be compelled to arbitrate its dispute with Gemco unless there is a valid binding arbitration agreement between it and Gemco. According to California state law principles, *without any proof showing Bond received, had knowledge of, consented to or accepted Gemco's Terms Sheet (and its punitive requirement to arbitrate claims in New Jersey), no arbitration agreement exists.* As a result, enforcement of Gemco's Terms Sheet and its unilateral remedies provision is unconscionable and unenforceable.

## A. NO AGREEMENT TO ARBITRATE EXISTS BETWEEN BOND AND GEMCO

The Federal Arbitration Act ("FAA") applies to all contracts involving interstate commerce and stipulates that written arbitration agreements are "valid, irrevocable, and enforceable, except on such grounds as exist at law or equity for the revocation of any contract." 9 *U.S.C.* § 2. However, prior to enforcing an arbitration agreement, the court must determine whether an arbitration agreement exists **at all**. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see also Balandran v. Labor Ready, Inc.*, 124 Cal.App.4th 1522, 1529-30 (2004) ("The policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration.").

In assessing the validity of an arbitration agreement subject to the FAA, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle,* 328 F.3d at 1170; *Whiteside v. Teltech Corp.*, 940 F. 2d 99, 102 (4th Cir. 1991) ("the Act leaves interpretation of an agreement to the application of common law principles of contract law"); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (a court may determine an agreement to arbitrate did not exist between the parties under general state law contract principles without contravening the FAA).

Under California law, contracts require consent and acceptance to be effective. Most obvious, consent is an essential element of a contract and such acceptance must be "absolute and unqualified" in order to bind the parties. *Cal. Civ. Code* § 1550; *Cal. Civ. Code* § 1585. As in this case, where Bond did not know that a proposal had been made, neither consent nor acceptance can be shown by contractual provisions of which Bond was unaware, contained in a document whose contractual nature is not obvious. *Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 879-882 (1962). The California Supreme Court said it clearly:

> The burden of ascertaining that the offer actually reached the offeree [even when the offer failed to reach the offeree by reason of mistake of one employed by offeree] was, we think, upon the offeror. **The offerer merely because it had sent out an offer was not entitled to sit back and take for granted the fact that it had been received and had been accepted**.

*American Building Maintenance Co.* v. *Indemnity Ins. Co.*, 214 Cal. 608, 615-616 (1932).

1  Even more specifically, in the context of arbitration agreements, "plaintiff's consent to, or
2  acceptance of, the arbitration provision is necessary to create an agreement to arbitrate." *Windsor*
3  *Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 992 (1972)**;** *see also Lawrence v. Walzer*
4  *& Gabrielson*, 207 Cal.App.3d 1501, 1505 (1989) ("Arbitration is consensual in nature"); *Lee v.*
5  *Southern California University for Professional Studies*, 148 Cal.App.4th 782 (2007) ("The strong
6  public policy in favor of arbitration does not extend to those who are not parties to an arbitration
7  agreement") (emphasis added).

8  In fact, California courts have addressed the exact situation faced in this dispute and rejected
9  the very basis which Gemco uses to support its motion to compel arbitration, stating, "buyers in one
10 state should not be forced into arbitration in another state unless there has been a **definite contract**
11 **knowingly entered into containing such a provision**." *Commercial Factors v. Kurtzman Bros.*,
12 131 Cal.App.2d 133 (1955) [emphasis added].

13 It is patently clear that Bond never consented to arbitrate its claims, let alone, arbitrate its
14 claims *across the country* in New Jersey. Instead, the facts demonstrate that: (a) Gemco failed to
15 mention or deliver the Term Sheet requiring arbitration in New Jersey prior to Bond placing its
16 Order or prior to Bond wiring Gemco a 50% deposit for the Blender; (b) Bond did not consider its
17 Murrieta warehouse a mailing address and at all times, represented that its Solana Beach office and
18 headquarters was the proper place for billing and correspondence; (c) notwithstanding knowing
19 Bond's proper mailing address and headquarters in Solana Beach, on August 17, 2006, Gemco, at
20 best,[5] sent the Terms Sheet to an unoccupied warehouse in Murietta, despite the fact that Bond was
21 not set to occupy that warehouse until September 2006; (d) before it had fully paid for the Blender
22 Bond did not receive the Terms Sheet, including the remedies section requiring arbitration in New
23 Jersey; and (e) Bond never consented to the provisions in the Terms Sheet Gemco unilaterally
24 drafted and may have mailed to it.

---

[5] The declaration of Alicia John in Support of Gemco's Motion to Compel Arbitration relies on Gemco's "custom and practice" in sending a letter with the Terms Sheet to posit, that she sent a letter on August 17, 2006 to Bond including the Terms Sheet. However, Ms. John provides no proof showing that such an important letter was sent via registered mail, or with any form of certificate of mailing, including: delivery confirmation, signature confirmation, or return receipt. It is also clear

7

1   Despite Gemco's repeated assertions that the FAA requires that arbitration be compelled
2   because the "Agreement to Arbitrate" is enforceable, Gemco does nothing to show that an arbitration
3   agreement was consented to, let alone, entered into and knowingly signed by Bond and Gemco.
4   Instead, Gemco points to a letter that was supposedly sent to an empty warehouse **after** Bond placed
5   its Order and paid a 50% deposit on the Blender, as proof that Bond knowingly entered into an
6   Agreement to arbitrate its California disputes in New Jersey.  However, Gemco's reliance on the
7   "mail box" rule to assert a presumption that Bond received the Terms Sheet allegedly sent by Gemco
8   does nothing to show that the Terms Sheet was *actually* received.  *Drazan v. United States*, 762 F.2d
9   56, 58 (7th Cir. 1985) ("mailing is not presenting; there must be receipt").  In its motion, Gemco
10  argues[6] that Bond received the letter and Terms Sheet sent by Alicia John because, according to Ms.
11  John, a "customer such as Bond would have to receive such a letter from Gemco or the customer
12  would not know the purchase price, terms or estimated delivery of the product." (John Declaration ¶
13  8).  Such a statement evidences a lack of due diligence on Gemco's part in checking whether such
14  information was actually provided to Bond prior to the supposed mailing of Ms. John's letter.  As
15  pointed out above, the purchase price, terms and estimated delivery date were provided to Bond by
16  Gemco's representatives Steve Lutes and Crystal Basiluk, and were referenced not only in the Order
17  but in Mr. Landow's emails with Ms. Basiluk.
18  In fact, Bond's CEO, Scott Landow, has specifically declared that Bond never received the
19  Terms Sheet prior to the placement of the order or Bond's payment for the blender. (Landow Decl.,
20  ¶¶ 16, 20).  Such a sworn statement is sufficient to overcome the mailbox presumption.  *Schikore v.*
21  *BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001) ("In the absence of
22  the use of registered or certified mail, on the one hand, and "[a] returned envelope or other indication
23  of failed delivery," on the other, both receipt and non-receipt are "difficult to prove conclusively.")
24  *See also Bailey v. U.S.*, 642 F.2d 344, 347 (9th Cir. 1981) ("we reject appellants' claim that a

---

from Ms. John's declaration that she has no personal knowledge of mailing the Terms Sheet to Bond (even to the wrong address).
[6] Amazingly, Gemco also argues through Ms. John's declaration that "Gemco does not have any correspondence or other communication from Bond Laboratories indicating that it did not receive the letter . . .." Absent the gift of clairvoyance, Gemco fails to explain how Bond would have been able to respond to a letter that it *did not* receive and that no advised Bond was being sent.

8

Case No.: 07CV2400 IEF NLS

presumption of receipt arises in this case. Assuming, without deciding, that such a presumption may arise under federal law, it was amply rebutted by the affidavits presented to the district court by the government.").

The Court should thus deny Gemco's attempt to compel arbitration based on unilateral terms that were never received nor consented to by Bond; particularly since in this instance, the moving party is seeking to enforce an agreement it clearly (at best) mailed to the wrong address after it already had received on multiple occasions notice of the correct address for all business correspondence with Bond and for reasons known only (perhaps) to Gemco addressed the Terms Sheet to a yet to be occupied warehouse, instead of to Bond's headquarters.

**B.  ANY PURPORTED ARBITRATION AGREEMENT IS UNCONSCIONABLE**

Not only is there no arbitration agreement between Bond and Gemco, but even assuming that such an agreement exists (which one cannot), the Court should invalidate the agreement as unconscionable. *Cal. Civ. Code* § 1670.5; *Cal. Code Civ. Proc.* § 1281.

While Gemco claims that the FAA governs this motion, the FAA does not preempt state law on the issue of unconscionability. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 98-99 (2000). Thus, judicial refusal to enforce an arbitration clause under a general contract principle such as unconscionability presents no obstacle to the objectives of the FAA and is identical under the FAA and California law. *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160-167; *Armendariz*, 24 Cal.4th at 119. In application, unconscionability has both a "procedural" and "substantive" element that manifests itself through the "absence of meaningful choice" on the part of one of the two parties together with contract terms that are "unreasonably favorable to the other party." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003).

### 1.  Procedural Unconscionability

Procedural unconscionability relates to circumstances concerning the formation of the contract and focuses on two factors: oppression and surprise. *Armendariz*, *supra*, 24 Cal. 4th, at 114. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. *Id.*, at 113. Surprise involves the extent to which the supposedly

agreed-on terms of the bargain are hidden in the printed form drafted by the party seeking to enforce the disputed terms. *Kinney v. United Healthcare Services, Inc.*, 70 Cal.App.4th 1322, 1329 (1999). In fact, even sophisticated businesses entities may be the victims of unconscionability if faced with a standard form contract with non-negotiable provisions. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807 (1981).

Such is the situation in the present dispute. The facts are clear that Bond, a start-up nutraceutical company, never had an opportunity to negotiate, or even read the arbitration clause contained in the Terms Sheet supposedly sent by Gemco. It goes without saying that Bond was faced with no opportunity or "meaningful choice" to reject the provisions in the Terms Sheet, since the terms were (perhaps) unilaterally sent to Bond **after** it agreed to purchase the Blender from Gemco and after it paid a 50% deposit. As a result, what Gemco considers an "arbitration agreement" is unduly oppressive. *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001). Furthermore, given that it cannot be disputed that the Terms Sheet was not received by Bond at the time the Blender was ordered (or even before Bond paid for the Blender), Bond was unable to knowingly waive its right to pursue its claims against Gemco in a judicial forum and, as such, Gemco's "arbitration agreement" is solely the offspring of surprise.

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the overly harsh or one-sided terms or results in an agreement. *Little v. Auto Stiegler, Inc.*, 29 Cal.4th at 1071. Specifically, a court should evaluate whether the agreement allocates the risks of the parties' bargain in an objectively unreasonable or unexpected manner. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal.App.4th 1659, 1664 (1993).

Under this standard, the Terms Sheet is plainly unconscionable. First, Gemco's Terms Sheet requires Bond, a company located in Solana Beach, California, to arbitrate in New Jersey using New Jersey law Bond's California related disputes regarding a product that was shipped to California. Because the Terms Sheet requires Bond to travel to New Jersey to arbitrate claims it echoes the situation in *Commercial Factors Corp. v. Kurtzman Bros.*, where a California resident purchased goods in New York and was not required by the court to arbitrate claims arising out of the purchase based on inconspicuous language printed on the back of order forms. 131 Cal.App.2d 133 (1955).

10

Case No.: 07CV2400 IEF NLS

1  The *Commercial Factors Corp* Court held, **"buyers in one state should not be forced into**
2  **arbitration in another state unless there has been definite contract knowingly entered into**
3  containing such a provision." *Id.*, at 135.  Here, no such knowing acceptance of Gemco's Terms
4  Sheet exists.

5  Gemco's one-sided agreement does not end there.  The Terms Sheet also includes
6  unconscionable provisions that limit Bond's remedies under the contract to the purchase price of the
7  Blender.  *See* Terms Sheet ¶ 16, ("In no event shall the Seller by liable for special, incidental and/or
8  consequential damages incurred; including without limitation, lost profits.").  Such a limitation, if
9  enforced, unreasonably allocates the risk of unsatisfactory performance of the Blender onto Bond
10 and reduces Bond's ability to seek relief from Gemco's conduct, including for fraudulent activities
11 that may provide for exemplary damages.  This result is overly harsh, one-sided, and insulates
12 Gemco from liability and thus renders the Terms Sheet substantively unconscionable.  When
13 combined with the multiple procedurally unconscionable factors relating to the arbitration clause
14 itself, these substantively unconscionable terms require this Court to find the provision requiring
15 Bond to arbitrate its claims against Gemco unconscionable and hence, unenforceable.

16 **C.    CALIFORNIA PUBLIC POLICY FAVORS RESOLVING DISPUTES LOCALLY**

17 Aside from a complete lack of evidence by Gemco showing consent and acceptance by Bond
18 of Gemco's arbitration provisions, common sense and fairness dictates that Bond should not be
19 compelled to adjudicate its claims across the country in New Jersey.  California has an "overriding
20 public policy favoring access to its courts by resident litigants." *Smith v. Superior Court of L.A.*, 17
21 Cal.3d 491 (1976) (quoting *Thomson v. Continental Ins. Co.*, 66 Cal.2d 738, 742 (1967)).  This is
22 especially true in regard to a Plaintiff's choice of forum.  *Price* v. *Atchison, T. & S. F. Ry. Co.*, 42
23 Cal.2d 577, 585 (1954) (A Plaintiff's choice of forum should "rarely be disturbed.").  Moreover, as
24 in this case, California law has held as unenforceable a party's attempts to enforce a forum selection
25 clause that discourages legitimate claims by imposing unreasonable geographical barriers. *Aral v.*
26 *Earthlink, Inc.*, 134 Cal.App.4th 544, 561 (2005).

27 The undisputed facts show that Bond is a company with its principal place of business in
28 California that placed an Order in California to purchase the Blender from Gemco, using Gemco's

California representative Steve Lutes.  Further, it is plainly clear that Gemco took full advantage of the business opportunities found in California by the very fact that it made well over $75,000 in a single sales transaction with Bond and subsequently delivered the Blender to California.  In spite of the overwhelmingly California nature of this dispute, Gemco relies on a never before seen or received provision in its Terms Sheet, to try to compel Bond to surrender its right to pursue its claims in a California judicial forum.

While Gemco may desire to compel arbitration in New Jersey, or, in the alternative, to transfer the present action to New Jersey, the Court should look at such a request as inconsistent with California's public policy considerations and therefore, for this reason as well, should deny Gemco's motion and allow for Bond's claims to continue in a California forum.

### IV.  CONCLUSION

For the foregoing reasons, Defendant Gemco's Motion to Compel Arbitration, or alternatively, dismiss or transfer this suit should be denied.

Dated:  February 11, 2008                         MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO


By:  s/ Micha Danzig
     Micha Danzig
     Juan C. Castañeda

Attorneys for Plaintiff
BOND LABORATORIES, INC.

12

Case No.: 07CV2400 IEF NLS

## CERTIFICATE OF SERVICE

On February 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| **Atty's Name** | **Attorneys for Defendants** |
|---|---|
| Michael L. Kirby, Esq. | |
| Kirby Noonan Lance & Hoge LLP | |
| 600 W. Broadway, Suite 1100 | |
| San Diego, CA 92101-3387 | |
| Telephone:   619-231-8666 | |
| Facsimile:   619-231-9593 | |
| Email:   mkirby@knlh.com | . |

                                            s/Micha Danzig
                                             Micha Danzig, Esq.