1  Micha Danzig (177923)
   mdanzig@mintz.com
2  Juan C. Castañeda (240705)
   jccastaneda@Mintz.com
3  Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
   5355 Mira Sorrento Place, Suite 600
4  San Diego, CA  92121
   Telephone:  858-320-3000
5  Facsimile:  858-320-3001

6  Attorneys for Plaintiff,
   BOND LABORATORIES, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  BOND LABORATORIES, INC., a California     Case No.: 07CV2400 IEF NLS
    corporation,
                                             DECLARATION OF SCOTT LANDOW IN
12                      Plaintiff,           SUPPORT OF BOND'S OPPOSITION TO
                                             GEMCO'S MOTION TO COMPEL
13        v.                                 ARBITRATION, OR ALTERNATIVELY,
                                             TO DISMISS FOR IMPROPER VENUE
14  GEMCO, INC., a New Jersey corporation, and
    DOES 1-10, inclusive,                    Date:    February 25, 2008
15                                           Time:    10:30 a.m.
                                             Judge:   The Hon. Irma E. Gonzalez
16                      Defendants.          Crtrm:   1

17

18        I, Scott Landow, declare as follows:

19        1.     I am the Chief Executive Officer of Bond Laboratories, Inc. ("Bond"), the Plaintiff

20  in this action.  I have personal knowledge of the matters herein and if called upon to testify could

21  competently testify to the following:

22        2.     In August 2006, Bond was preparing to manufacture its nutraceutical products line,

23  which included nutritional sports drinks.

24        3.     As a start-up company, we had a short window of opportunity in order to go from

25  conception, manufacturing, and then to distribution of our nutraceutical products.

26        4.     In early August 2006, we looked at the possibility of purchasing an industrial

27  blender known as a Liquid-Solids Agitator Model Direct-Drive Portable Blender (the "Blender"),

28

                                             1
    DECLARATION OF SCOTT LANDOW IN SUPPORT OF BOND'S OPPOSITION TO GEMCO'S MOTION TO
    COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE

1    from Defendant Gemco, Inc. ("Gemco") for delivery in late December 2006 and for a planned

2    distribution of our nutritional sports drinks products at the start of 2007.

3         5.    During the first week of August 2006, Bond contacted a California sales

4    representative for Gemco, Steve Lutes.

5         6.    During several telephone conversations with Mr. Lutes, we were informed by Mr.

6    Lutes that the purchase price for the Blender would be $75,756. All of the telephone calls I had with

7    Mr. Lutes were from Bond's headquarters in Solana Beach which at that time was at 777 S.

8    Highway 101, Suite 215, Solana Beach, CA 92075.

9         7.    I, and I am informed others at Bond, were repeatedly assured by Mr. Lutes that

10   Gemco would timely deliver a high quality Blender in December 2006 that would meet all of

11   Bond's manufacturing needs.

12        8.    During these conversations, I, and I am informed others at Bond, informed Mr. Lutes

13   that Bond would only be able to begin manufacturing its nutraceutical products after Bond received

14   a fully functional Blender from Gemco.

15        9.    Mr. Lutes was also informed by me and, I am informed, by others at Bond, that Bond

16   would be delayed in going to market with its nutritional sports drink products until Bond received

17   the promised fully functional Blender from Gemco.

18        10.   To my knowledge, at no time during these conversations with Mr. Lutes was anyone

19   from Bond told about, or shown, a "terms and conditions" form, indicating that any dispute between

20   Bond and Gemco would be subject to arbitration in New Jersey and under New Jersey law.

21        11.   Had I been informed or advised of such a term (or of Gemco's supposed limitation of

22   liability provision), I would have renegotiated the purchase to try and ensure that disputes were

23   litigated in California. Bond was a very small start up company at that time and under no

24   circumstance would I have knowingly entered into an agreement that required Bond to travel to

25   New Jersey to litigate over a dispute regarding the purchase of a $75,000.00 product.

26        12.   After having the discussions with Gemco representative, Mr. Lutes, I was convinced

27   that Gemco would deliver to Bond a high quality Blender.

28

2

DECLARATION OF SCOTT LANDOW IN SUPPORT OF BOND'S OPPOSITION TO GEMCO'S MOTION TO
COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE

13.    As a result, on or about August 11, 2006 Bond communicated to Mr. Lutes the decision to order from Gemco the Blender.

14.    In response, on August 15, 2006, Crystal Basiluk, a member of Gemco's Capital Sales, sent an email to us. I responded to Ms. Basiluk via email on August 15, 2006 and she responded to my email that day. I note, that my email correspondence with Ms. Basiluk plainly identifies the office and mailing address for Bond. Attached hereto as Exhibit A is a true and correct copy of the three emails exchanged on August 15, 2006 between Ms. Basiluk and me (with only Bond's bank account information redacted).

15.    After such correspondence, and because of our timeframe for manufacturing, we quickly wired on August 17, 2006 - at Ms. Basiluk's request - the 50% deposit for the Blender.

16.    That same day, on August 17, 2006, I faxed on behalf of Bond a formal purchase order ("Order") to Gemco for the Blender in the amount of $75,756. Attached hereto as Exhibit B is a true and correct copy of the Order (with only Bond's tax ID number redacted).

17.    Around the time that Bond placed the Order, Bond had entered into a new lease agreement for a warehouse in Murrieta, California where the manufacturing of Bond's nutraceutical products would take place. Based on this lease, Bond's occupancy of the warehouse would not begin until September 2006. Attached hereto as Exhibit C is a true and correct copy of the first page of the lease for the Murrieta warehouse.

18.    In the Order I identified the Murrieta warehouse location (which was set to be occupied in September 2006) as the shipping location for the Blender precisely because Gemco had represented that the Blender would only be ready for delivery in December 2006 and by then, given Bond's plan to occupy the Murrieta warehouse space in September there would be a Bond employee there to take delivery of the Blender.

19.    However, during all of my dealings with Gemco, Bond clearly identified its billing and correspondence address and headquarters as being in Solana Beach, California. This included the Order of August 17, 2006. Despite this, on that day, Ms. Alicia John states in her declaration that she sent to Bond's future warehouse and not to its headquarters and billing address a letter that

3

DECLARATION OF SCOTT LANDOW IN SUPPORT OF BOND'S OPPOSITION TO GEMCO'S MOTION TO
COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE

1  Ms. John surmises "would have included" a Terms and Conditions Form ("Letter"), based on

2  Gemco's custom and practice.  From reviewing Ms. John's declaration I can confirm that this Letter

3  was addressed to Bond's not yet occupied Murrieta warehouse location and that no one on behalf of

4  Bond occupied this location until some time in September of 2006.  Attached hereto as Exhibit D is

5  a Letter from Alicia John to Dr. Robery (sic) Kay dated August 17, 2006 that I am informed from

6  Ms. John's declaration she may have sent to Bond.

7       20.    Neither I, nor to my knowledge did anyone else employed by Bond, receive this

8  Letter on August 17, 2006 or anytime before Bond paid for the Blender in full.  As a result, Bond

9  proceeded with the Order based on Gemco's past representations, which *never* mentioned, among

10  other things, the remedies requirement set forth in the Terms and Conditions form attached to the

11  Letter.

12       21.    In purchasing the Blender Bond followed the terms that were actually communicated

13  between the parties, including in the Order and in my emails with Ms. Basiluk, which is why Bond

14  paid the remaining balance on the Blender on December 5, 2006, prior to shipment of the Blender

15  by Gemco on December 20, 2006.

16       I declare under penalty of perjury under the laws of the State of California and the United

17  Sates of America that the foregoing is true and correct.  Executed this 11th day of February, 2007 at

18  Solana Beach, California.

19

20

21  By: _____

22      Scott Landow

23

24

25

26

27  4253319v.1

28
                                    4
        DECLARATION OF SCOTT LANDOW IN SUPPORT OF BOND'S OPPOSITION TO GEMCO'S MOTION TO
        COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE

## CERTIFICATE OF SERVICE

On February 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Atty's Name**                                    **Attorneys for Defendants**
**Michael L. Kirby, Esq.**
**Kirby Noonan Lance & Hoge LLP**
**600 W. Broadway, Suite 1100**
**San Diego, CA 92101-3387**
**Telephone:    619-231-8666**
**Facsimile:     619-231-9593**
**Email:          mkirby@knlh.com**


                                                    s/Micha Danzig
                                                    Micha Danzig, Esq.

4253319v.1

DECLARATION OF SCOTT LANDOW IN SUPPORT OF BOND'S OPPOSITION TO GEMCO'S MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE

# EXHIBIT A

**From:**        Crystal L. Basiluk [cbasiluk@okgemco.com]
**Sent:**        Wednesday, August 16, 2006 11:05 AM
**To:**          'Scott Landow'
**Subject:**    RE: Credit References

Can you fax me a copy of your tax exempt certificate. Fax # is (732) 752-5857.

-----Original Message-----
**From:** Scott Landow [mailto:sdlandow@got-fusion.com]
**Sent:** Tuesday, August 15, 2006 11:24 AM
**To:** cbasiluk@okgemco.com
**Subject:** RE: Credit References

Crystal,

No problem:

The account at B of A is _____ but the company also has CD's at Bank of America

Trade reference:

Custom Logos – 858-277-1886
Herbally Yours – 480-892-8220

It is my understanding that we are going to be putting 50% up front. Do you want a wire or a check? We don't want to lose any time.

Thanks,

**Scott D. Landow**
Team Fusion
777 S. Hwy 101 Suite #215
Solana Beach, CA 92075
858.847.9000

*a thought worth pondering:*
"If you knew you couldn't fail, what would you be doing different?"

---

**From:** Crystal L. Basiluk [mailto:cbasiluk@okgemco.com]
**Sent:** Tuesday, August 15, 2006 7:26 AM
**To:** 'Scott Landow'
**Cc:** Bob Zangara; Alicia John
**Subject:** Credit References

Hello Scott,

I received the bank name and number. What we need is 3 trade credit references
and a bank account reference, so we may run your credit and accept your purchase order.
Thank you.

With kind regards

**Crystal Basiluk**
Gemco Capital Sales

GEMCO
301 Smalley Avenue, Middlesex, NJ 08846-2269
Phone: (732) 752-7900

Fax:(732) 752-5857
Email:cbasiluk@okgemco.com
http://www.okgemco.com

"The information transmitted is intended only for the person or entity to which it is addressed and may contain  Confidential and/or privileged material. Any review, e-transmission,dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient are  prohibited."

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.516 / Virus Database: 269.19.20/1262 - Release Date: 2/6/2008 9:13 AM

# EXHIBIT B



Bond Laboratories, Inc.

777 S Highway 101,
Suite 215
Solana Beach, CA 92075

Phone: 858-847-9000
Fax: 858-847-9090

## *Purchase Order*

**Bill To:**

777 S. Highway 101 Suite 215
Solana Beach, CA 92075

**Ship To:**

38340 'H' Innovation Court Unit 803
Murrieta, CA 92562

Purchase Order # E111806
Date: 08/11/06
Vendor ID: Gemco

| Req By | Ship When | Ship Via | Date | Buyer | Terms | Tax ID |
|---|---|---|---|---|---|---|
| SDL | When Ready | Purchaser to arrange | 8/11/06 | TK | 50% when accepted/50% WR | |

| Quantity | Item | Units | Description | Discount % | Taxable | Unit Price | Total |
|---|---|---|---|---|---|---|---|
| 1 | | | **LIQUID-SOLIDS AGITATOR MODEL DIRECT-DRIVE PORTABLE BLENDER** | | | $75,756.00 | $75,756.00 |
| | | | | | | | $.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| Subtotal | | $75,756.00 |
| Tax | | |
| Shipping | | |
| Miscellaneous | | |
| Balance Due | | |

# EXHIBIT C



ORIGINAL

## AIR COMMERCIAL REAL ESTATE ASSOCIATION
## STANDARD INDUSTRIAL/COMMERCIAL
## MULTI-TENANT LEASE - GROSS

1.    **Basic Provisions ("Basic Provisions").**

    1.1    **Parties:** This Lease ("**Lease**"), dated for reference purposes only ___July 3,  2006___ ,
is made by and between ___Silverhawk Industrial, L.P.___

_____ ("**Lessor**")

and ___Bond Laboratories, Inc.___

_____ ("**Lessee**"), (collectively the "**Parties**", or individually a "**Party**").

    1.2(a)    **Premises:** That certain portion of the Project (as defined below), including all improvements therein or to be provided by Lessor
under the terms of this Lease, commonly known by the street address of ___38340 'H' Innovation Court Suite 803___ ,
located _for mailing Purposes_ in the City of ___Murrieta___ , County of
___Riverside___ , State of ___California___ , with zip code
___92563___ , as outlined on Exhibit ___"A"___ attached hereto ("**Premises**") and generally described as (describe briefly the nature of the
Premises):
___Approximately 1,875 Rentable Square Feet in Building 'H' of an Industrial MULTI-TENANT___
___Business Center known as Innovation Court Business Center. Lease premise has a Murrieta___
___mailing address, is under the jurisdiction of County of Riverside, and is subject to be___
___annexed into the City of Temecula. Size of unit is measured to the center of the wall (in___
___the case of an end-cap to the outside surface of the concrete wall) and  to the___
___"drip-line" of the building.___
In addition to Lessee's rights to use and occupy the Premises as hereinafter specified, Lessee shall have non-exclusive rights to any utility raceways of
the building containing the Premises ("**Building**")and to the Common Areas (as defined in Paragraph 2.7 below), but shall not have any rights to the
roof, or exterior walls of the Building or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they
are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "**Project.**" (See also Paragraph 2)

    1.2(b)    **Parking:** ___Two (2) spaces per 1,000 Square Feet of Lease Space___ unreserved vehicle
parking spaces . (See also Paragraph 2.6)

    1.3    **Term:** ___2___ years and ___no___ months ("**Original Term**") commencing ___September 1, 2006___
("**Commencement Date**") and ending ___24 months thereafter.___ ("**Expiration Date**"). (See also Paragraph 3)

    1.4    **Early**
**Possession:** _Upon i) Execution and delivery of the lease by both lessee and lessor, ii)funding_
_of the lease by Lessee, iii) Receipt of Lessor of Lessee's General Liability Insurance certificate as detailed in_
_paragraph 8.2 of this lease._

("**Early Possession Date**"). (See also Paragraphs 3.2 and 3.3)

    1.5    **Base Rent:** $ ___1,968.75___ per month ("**Base Rent**"), payable on the ___First___
day of each month commencing ___September 2006___ . (See also Paragraph 4)

**INITIALS**            **PAGE 1 OF 25**            **INITIALS**

©1998 - AIR COMMERCIAL REAL ESTATE ASSOCIATION            FORM MTG-4-5/04E

# EXHIBIT D

Thursday, August 17, 2006

**GEMCO®**

501 SMALLEY AVENUE
MIDDLESEX, NJ 08846-2590
(732) 752-7900  FAX (732) 752-5857
1-800 OK GEMCO
www.okgemco.com
E-Mail: sales@okgemco.com

Bond Laboratories
38340 "H" Innovation Court Unit #03
Murrieta, CA 92562
Phone: (858) 847-9000

Dear Mr. Robert Kay,

Thank you for your purchase order number B111806 calling for one (1) 5 CF slant Cone Liq/Sol Agitator Portable, per Gemco proposal number 060814-01.

The total price for this machine is $75,758.00 FOB Middlesex, New Jersey.

Note:  All prices are in US Dollars.

Modifications and/or revisions to the original order, resulting in price changes will be included in the next scheduled invoice.

The attached terms and conditions are part of this order. If not attached, please contact GEMCO [1-800-OK-GEMCO] for additional copies of our terms and conditions.

Terms of payment are as follows:

Fifty percent (50%), due and payable after order is accepted by seller, net 0.

Fifty percent (50%) , due and payable upon notice from seller that the order is ready to ship, net 30.

All invoices are due upon receipt. Please ensure timely payment of invoices in order to avoid delivery delays.

Shipment for your machine has been scheduled under our job number 26588 and is scheduled for shipment for the week ending 11/30/2006 .

We sincerely appreciate this opportunity to be of service to you. If you have any questions or require additional information, please contact me at 732-752-7900 ext. 344.

Sincerely,

Alicia John, Gemco

*Doc 1*

## TERMS AND CONDITIONS:

1.  **GENERAL-** GEMCO Dryers and Blenders are manufactured for the purpose of processing free flowing powders.

2.  **DEFINITIONS-**
    *Buyer-* shall refer to the issuer of the purchase order, authorized representative of the end user and /or the end user.
    *Seller-* shall refer to the General Machine Company of New Jersey and/or GEMCO.

3.  **SHIPMENT-** All shipping dates and estimates are subject to: (i) the prior sale of equipment in inventory, Seller's manufacturing backlog, also any part thereof. (ii) causes beyond the Seller's reasonable control; acts of god, fires, floods, epidemics, riots, wars, priorities and acts of civil or military authority; (iii) strikes, labor difficulties and shortage of labor; (iv) delays in transportation, car shortages and shortages in fuel power, materials and supplies; (v) acts of the purchaser and receipt of all required information and/or materials from purchaser, and (vi) time is not of the essence.

    All shipments are expressed as weeks after receipt of order (ARO) and/or after Buyer approval (see section # 22). All weeks are five (5) working days each, excluding Seller's Holidays and vacation shut downs

4.  **WARRANTY-NEW EQUIPMENT-** The Seller warrants all equipment EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

    The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately. This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done. This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, improper installation or operating conditions in excess of design specifications as documented by the final proposal and/or engineering drawings issued by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization. This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated in section 1 above.

    Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

    The Seller prior to work being performed must authorize all warranty service.

Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initialed by the purchaser before an engineer or mechanic is scheduled.

**ITEMS NOT COVERED UNDER WARRANTY-** any wearable part such as, but not limited To seat rings bushings, o-rings, brake pads, etc.

Drive shafts, bearings, gears, reducers and any other parts worn or damaged due to miss alignment and/or improper installation by others, other than an authorized factory representative will not be covered under this warranty.

**REPAIRS-** should an in-warranty repair be necessary, in the judgment of the Seller and the equipment is impractical to return; the Seller will arrange for repairs by Seller's personnel or at Seller's option, subcontract to a qualified company. The Buyer will be expected to cooperate by making equipment available and accessible when the work is scheduled and is expected to provide the necessary utilities, equipment and assistance to facilitate repairs.

5.  **WAIVER AND MODIFICATION-** No waiver or modification of any of the Seller's terms and conditions shall be effective unless such waiver or modification is in writing and signed by an authorized representative at the office of the Seller in Middlesex, New Jersey.

6.  **INDEMNITY-** Buyer is responsible for and shall comply with all Local, Regional, State, Federal and International laws and regulations that govern the use of this type of equipment and its ancillary components. Buyer shall use and require its employees to use all safety devices, guards and proper safe operating procedures. Buyer shall not remove or modify any such device or guard or warning signs. Buyer will be responsible for maintaining an interlocked enclosure around the machinery. Buyer agrees to indemnify and save Seller harmless from any liability or obligation incurred by the Buyer to persons injured directly or indirectly in connection with the operation of such products.

7.  **TITLE-** Title for all parts and equipment ordered by the Buyer and risk of loss and/or damage shall pass to the Buyer upon delivery of parts and equipment to a carrier for shipment. The Buyer shall submit any claims for shortages or damages suffered in transit directly to the carrier. Also, Buyer shall notify the Seller of any damage(s) or shortage(s) within forty-eight (48) hours of receipt. Failure to notify Seller may void this warranty.

8.  **INSURANCE-** From date of shipment until the invoice is paid in full, purchaser agrees to provide and maintain at its expense, but for the Seller's benefit, insurance equal to the purchase price of the equipment against any loss or damage of any nature whatsoever.

9.  **PAYMENT TERMS-**
    *Established accounts:*
    a)  For orders under $25,000.00 our terms are net 30 days from shipment or upon notice that order is ready to ship.

    b)  For orders over $25,000.00 our terms are:
        Twenty percent (20%), due and payable after Seller accepts order, net 0.
        Forty percent (40%), due and payable six (6) weeks after order is accepted by Seller, net 30.
        Forty percent (40%), due and payable upon notice from Seller that the order is ready to ship, net 0.

c) All payments are due upon receipt of invoice.
d) When deliveries are less than 12 weeks, payment schedules will be adjusted.
e) Based on Buyer's credit references, Seller reserves the right to modify payment terms.

*New accounts:*
Fifty percent (50%), due and payable after Seller accepts order, net 0.
Balance, due and payable upon notice from Seller that the order is ready to ship, net 0.
(All payments are due upon receipt of invoice.)

10. **CHANGE ORDERS-** Any changes to Buyers original specifications which require additional engineering time, material and/or labor WILL result in delayed shipment and additional costs. No changes will be made without written authorization from the Buyer and/or a written change order to the original purchase order stating the nature of the change, price adder and new delivery.

11. **PURCHASE ORDER CANCELLATIONS-** Should cancellation occur after a purchase order has been placed the following charges will apply according to the time of cancellation:
   a. 1 to 10 days - 15%.
   b. 11 to 30 days - 25%.
   c. 31 to 60 days - 40% plus material.
   d. 61 to 75 days - 55% plus material.
   e. 76 days to 90 days - 75% plus material.
   f. 90 days and over - 100%.

12. **INSPECTIONS-** The Buyer is encouraged to inspect and/or witness mechanical testing of the equipment, especially when changes have been made to the original specification and/or it is impractical to return equipment for possible warranty claims, as outlined in Sections 4, 6, and 15. All written, mechanical specifications are inspected.

13. **SPECIFICATIONS-** If the Seller submits any drawings and/or specifications for approval, the Buyer is required to approve or disapprove the drawings and/or specifications within the time frame as specified on the Sellers Engineering Drawing Transmittal Sheet. The Seller reserves the right to re-schedule production or to consider the order cancelled after ten (10) Days from the specified drawing return date if drawings are not returned. Cancelled orders are subject to fees as described in paragraph 13.

14. **RETURNS-** Permission to return any parts or equipment must be in writing and must be returned with transportation costs prepaid. In the event equipment or parts manufactured by the Seller are returned, the obligation of the Seller is limited to repairing or replacing parts which, upon Seller's examination, are found to be defective in either material or workmanship. The Seller will pay no transportation charges, unless the Seller gives priors written approval for transportation charges.

15. **PRICING-**
All proposal prices are firm for thirty (30) days and subject to review after 30 days, unless otherwise noted.

16. **REMEDIES-** In the event of a dispute between Seller and Buyer, any and all disputes shall be resolved by arbitration, in the State of New Jersey, in the County of Middlesex. In no event shall the Seller be liable for special, incidental and/or consequential damages incurred; including, without limitation, lost profits.

17. **ENTIRE AGREEMENT**- The terms and conditions set forth herein, including all specification, drawings and other documents, expressly referred to in this proposal (order), contain the entire agreement between the Buyer and Seller and supersede all prior negotiations, agreements, understandings or arrangements between the Buyer and Seller with respect to the subject matter hereof.

18. **INTELLECTUAL PROPERTY** - All drawings, manuals, sketches, calculations, designs, promotional materials, video tapes, computer files and any other intellectual property conveyed to Buyer in whatever manner in conjunction with the equipment provided under this agreement, are and remain the property of Seller. There is no assignment of any rights to such material whatsoever.

19. **APPLICABLE LAWS.** This agreement shall be construed and interpreted in accordance with The laws of the State of New Jersey.

20. **REFURBISHED EQUIPMENT**- the Seller warrants all NEW parts EXPRESSLY MANUFACTURED BY THE SELLER to be free of defects in workmanship and material. The Seller's obligation under the warranty is limited to repair or replace, at the Seller's discretion, any parts manufactured by the Seller and returned to the Seller's location, within one (1) year after delivery of equipment of it's manufacture to the original Buyer. The Buyer shall return to the Seller with transportation prepaid, at which time examination shall disclose to the Seller's satisfaction to have been defective.

21. The Seller neither assumes, nor authorizes any other persons to assume for it, any liability in connection with the sale of it's equipment except under conditions of this warranty. Loud noises and excessive vibrations are unusual for this type of equipment and should be reported to the Seller immediately. This warranty does not cover any labor charges for replacement of parts, adjustment, repairs, or any other work done. This warranty shall not apply to any equipment which in the Seller's opinion has been subjected to misuse, negligence, or pressures in excess of limits shown as operating conditions by the Seller or which shall have been repaired or altered outside of the Seller's factory without express factory authorization. This warranty shall not apply to equipment installed in hostile environs unless conditions were specified at the time of purchase. This machine is further not warranted and/or guaranteed to perform to any particular process, implied or specified by the Buyer or the Seller, nor fit for any process other than stated is section 1. Above. Replacement of defective material will be F.O.B. Middlesex, NJ. Replacement of component parts not of the Seller's manufacture will be limited to the warranty of the specific manufacturer of such parts. The Seller will assist the Buyer in any third party warrantee claims.

The Seller, prior to work being performed must authorize all warranty service. Should a service engineer or shop mechanic be required for in-warranty repairs, the appropriate travel and living expense will be applied. A purchase order must be initiated by the purchaser before an engineer or mechanic is scheduled.

All existing parts EXPRESSLY MANUFACTURED BY THE SELLER are warranted for 90 days. Any other parts are NOT warranted.

22. **ORDER CLASSIFICATIONS** -- (All orders are subject to acceptance by Seller and credit approval of Buyer)

**ALL ORDERS ARE ACCEPTED BY GEMCO AS CERTIFIED:**

Certified shall mean that the Buyer has issued a purchase order, in writing, based on the sell price, completion date (expressed as weeks ARO), terms and conditions. Gemco will initiate all phases of engineering, purchasing, manufacturing and issue "certified" drawings for the equipment being built.

**APPROVAL ORDERS -- WHEN REQUESTED BY THE BUYER:**
Approval shall mean that the Buyer has issued a purchase order based on the sell price, terms and conditions proposed and completion date (expressed as weeks after "customer approval" of drawings). Gemco typically issues "approval" drawings 2-4 weeks ARO.
However, purchasing of material and manufacturing will NOT proceed until AFTER Buyer approves drawings and/or both the Buyer and GEMCO accept changes. The Buyer may authorize, in writing, certain items as certified to proceed with purchasing and manufacturing to expedite delivery.

Please note: the Buyer must authorize ALL requested changes in writing. Changes that affect price and/or delivery require a change order(s) to the original purchase order from the Buyer.

23.   **INSTALLATION and CLEANING**-The Buyer is responsible for the rigging, installation, alignment and utility connections of the purchased equipment. The Seller does not certify the equipment to be clean for Buyer's production purposes. Further, the Buyer is responsible for cleaning and removing materials used by the Seller, in the normal course of manufacturing equipment, to meet Buyer's process requirements. Unless, specified all units are NOT passivated.

All equipment is manufactured to United States Standards. Any standards required specifically for the equipment destination must be communicated to Gemco prior to acceptance of order. Such standards may result in an additional cost.