Micha Danzig, Esq. (SBN 177923)
mdanzig@mintz.com
Juan C. Castañeda, Esq. (SBN 240705)
jccastaneda@mintz.com
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
5355 Mira Sorrento Place, Suite 600
San Diego, CA 92121
Telephone: 858-320-3000
Facsimile: 858-320-3001

Attorneys for Plaintiff,
BOND LABORATORIES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOND LABORATORIES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GEMCO, INC., a New Jersey corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 07CV2400 IEG NLS<br><br>**PLAINTIFF BOND LABORATORIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GEMCO'S *EX PARTE* APPLICATION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING ITS MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE**<br><br>Date: April 7, 2008<br>Time: 10:30 a.m.<br>Judge: The Hon. Irma E. Gonzalez<br>Crtrm: 1 |

Plaintiff Bond Laboratories, Inc. ("Bond") submits this memorandum of points and authorities in opposition to Defendant Gemco, Inc.'s ("Gemco") *Ex Parte* Application for Reconsideration of the Court's Order Denying Gemco's Motion to Compel Arbitration or to Dismiss For Improper Venue ("Application").

**I.   INTRODUCTION.**

After Gemco failed to provide the factual basis for its Motion to Compel Arbitration, it seeks the extraordinary remedy of reconsideration, which we can only be considered a veiled attempt at two bites of the same apple. However, Gemco's Application fails in two material respects: first, it provides no "new" facts for reconsideration—Mr. Lutes was never "discovered,"

1

Case No.: 07CV2400 IEG NLS

1   but instead was noted by Bond throughout its Complaint (filed almost **5 months prior** to Gemco's

2   Motion to Compel Arbitration) and, frankly, has always been with Gemco as its representative **for**

3   **the past 19 years**. Second, the Court properly exercised its discretion in *not* considering Gemco's

4   new arguments introduced in its Reply *(*which the Court partially considered and found

5   unpersuasive), given that Gemco failed to show how Bond raised "new matters" in its Opposition.

6   As laid out below in detail, Bond's Opposition simply reiterated what Bond had been stating to

7   Gemco for at least **two months before** Gemco brought the Motion to Compel Arbitration—that it

8   had not received the terms and conditions document prior to paying for the blender. It would be the

9   height of unfairness and a waste of judicial resources to allow Gemco to reargue a motion it failed

10  to provide factual support for with *more* "new evidence" that was not in any way "new" to Gemco.

11  As a consequence of all of the above, Gemco's Application must be denied.

12  **II.     STATEMENT OF FACTS.**

13          Gemco's Application provides as fact the claim that "Bond raised new matters in its

14  Opposition . . .(i.e. that no one from Bond was ever told about or saw Gemco's 'terms and

15  conditions', which included a provision to arbitrate in Middlesex, New Jersey." [Application 2:15-

16  18.] Gemco's Application reiterates that "Bond's Opposition Motion presented new material when

17  it alleged, among other things, that no one from Bond was told about, or shown, Gemco's terms and

18  conditions that included the provision to arbitrate any and all disputes in Middlesex, New Jersey."

19  [Application 5:19-22.]

20          However, as far back as November 13, 2007, Bond, through its attorney, made it clear that it

21  "has no record of ever receiving this letter to Dr. Kay or the attached 'terms and conditions.'"

22  [Declaration of Micha Danzig ("Danzig Decl.") ¶ 2, Ex. A, email from Micha Danzig to Michael

23  Kirby dated November 13, 2007.] Further, Bond's attorney asked "Does Gemco have any evidence

24  that this letter was sent before it received payment from Bond for the blender?" [Id.] Three days

25  later on November 16, 2007, Bond's attorney reaffirmed that Bond "never received the terms and

26  conditions with the Arb clause before Bond paid for the blender. Thus, I need to hear from you if

27  your client has any proof that my client received these terms and conditions before Gemco received

28  payment for the blender, before I can discuss this matter further with my client." [Danzig Decl. ¶ 3,

1  Ex. B, email from Micha Danzig to Michael Kirby dated November 16, 2007.]  In response, Mr.

2  Kirby stated "I doubt any business would keep 'proof' of letters mailed" but "I believe Gemco

3  sends a confirming letter for all such orders" and "Gemco's form letter doing so also specifically

4  references 'The attached terms and conditions are part of this order' and encloses those terms."

5  [Danzig Decl. ¶ 4, Ex. C, email from Michael Kirby to Micha Danzig dated November 16, 2007.]

6  Almost two and a half weeks later, on December 4, 2007, without any proof from Gemco as

7  requested by Bond's counsel showing that Bond received the terms and conditions, Bond's counsel

8  emailed Mr. Kirby reminding him that "we are still waiting for your response on this, since Bond

9  has no record of receiving these terms and conditions and it would not have knowingly agreed to

10  arbitrate any disputes over the purchase of this blender in New Jersey."  [Danzig Decl. ¶ 5, Ex. D,

11  email from Micha Danzig to Michael Kirby dated December 4, 2007.]  In response, Mr. Kirby

12  stated, "My client swears it was mailed" but "[t]he letter was not sent certified mail, and thus

13  neither side's position can be established with absolute certainty."  [Danzig Decl. ¶ 6, Ex. E, email

14  from Michael Kirby to Micha Danzig dated December 4, 2007.]  Rather than provide any proof to

15  support this position, three weeks later, Gemco filed a Notice of Removal of Action to the United

16  States District Court, Southern District of California, on December 21, 2007 and subsequently

17  brought a Motion to Compel Arbitration in New Jersey on January 3, 2008.

18  On January 11, 2008, Bond filed and served its Opposition to Gemco's Motion to Compel

19  Arbitration, <u>which reiterated what it had been saying all along, it never received the terms and</u>

20  <u>conditions prior to Bond's payment for the Blender</u>.  Despite this *old* fact, Gemco's Reply brief

21  filed on February 15, 2008, argues for the first time, that based on *new* evidence from its

22  representative Mr. Steve Lutes that he allegedly sent the terms and conditions sheet to Bond's

23  consultant on July 13, 2006 that Bond therefore received the terms and conditions and thus these

24  terms and conditions were part of the parties' agreement. [Reply 1: 13-17; 5:1-5.]

25  Gemco's Application now states that "in preparing its reply, Gemco **discovered** a witness

26  with personal knowledge that Bond did actually receive the terms and conditions which contain the

27  arbitration requirements."  [Application 2:22-24 (emphasis added).]  In fact, Gemco makes the

28  representation that it "did not even know of the existence of a witness (not a Gemco employee) who

3

1 could provide admissible evidence that Bond did actually receive Gemco's terms and conditions"
2 until it "**discovered**" Mr. Lutes *after* filing its motion to compel arbitration. [Application 5:25-6:2.]
3 These self-serving statements are contradicted by Bond's Complaint, filed on August 15, 2007
4 (almost 5 months prior to Gemco's Motion to Compel Arbitration filed on January 3, 2008) which
5 is replete with clear indications that Mr. Lutes did not need to be "discovered."

6 Bond's Complaint states in six separate paragraphs spanning two pages of the six page
7 Complaint that: (a) it "contacted a California sales representative for Gemco, **Steve Lutes** ("Mr.
8 Lutes"); (b) "Bond Laboratories representatives had a number of meetings with **Mr. Lutes** in San
9 Diego, County, California."; (c) "**Mr. Lutes** repeatedly assured Bond Laboratories that Gemco
10 would timely deliver a high quality Blender that would meet all of Bond Laboratories'
11 manufacturing needs."; (d) "**Mr. Lutes** was fully apprised in these discussions of Bond
12 Laboratories' needs and its plans for this Blender."; (e) "**Mr. Lutes** knew that Bond Laboratories
13 was only going to be able to begin manufacturing its nutraceutical products after it received from
14 Gemco a fully functional Blender that met promised specifications."; (f) "**Mr. Lutes** also knew that
15 Bond Laboratories was going to be delayed in going to market with its products until it received
16 from Gemco the promised Blender"; (g) **Mr. Lutes** knew that "Bond Laboratories was acquiring
17 other manufacturing equipment that would be useless to Bond Laboratories without the Gemco
18 Blender; (h) "**Mr. Lutes** was well informed of all the damages Bond Laboratories would incur if
19 Gemco delivered a defective Blender."; (i) "Based on its meetings with **Mr. Lutes**, on or about
20 August 17, 2006, Bond Laboratories placed a purchase order" (j) "Bond Laboratories contacted
21 Gemco's local sales representative, **Steve Lutes**, to see if he could remedy the problem."; and (k)
22 "**Mr. Lutes** again confirmed that Gemco could still not repair the Blender and that it was uncertain
23 when the blender could be operational." [Complaint, ¶¶ 7-11, 16. (emphasis added).]

24 Not only did Mr. Lutes not need to be "discovered" by Gemco but his own declaration
25 attached to Gemco's Reply brief in Support of its Motion to Compel Arbitration makes it
26 remarkable to believe that he was ever "lost." In short, Mr. Lutes states clearly that he has "served
27 as Gemco's Manufacturing Representative for approximately **19 years**." [Decl. of Lutes ¶ 4
28 (emphasis added).]

4

1 **III.   ARGUMENT.**

2      **A.   The Court Should Not Reconsider Its Order Since No New Facts Exist Which Didn't Exist At The Time Of Gemco's Motion To Compel Arbitration.**

3

4    Gemco claims that its Application is appropriate since, the Local Rules for the District of the

5 Southern District 7.1(i) provide that reconsideration of a prior motion refused can be made for the

6 same relief if the party seeking such relief presents "an affidavit of a party or witness or certified

7 statement of an attorney setting forth the material facts and circumstances surrounding each prior

8 application, including . . .<u>what new or different facts and circumstances are claimed to exist which

9 did not exist, or were not shown, upon prior application</u>."  The "new" facts which Gemco claims to

10 exist, which did not purportedly exist when it brought its Motion to Compel Arbitration, is that

11 "Bond received the terms and conditions, including the arbitration provision, as part of a quote sent

12 on July 13, 2006."  [Application 3:22-24.]

13    Gemco seems to ignore the fact that "[m]ost judges are not receptive to motions to

14 reconsider," reconsideration is an "**extraordinary remedy**, to be **used sparingly**" and absent

15 highly unusual circumstances, a motion for reconsideration will not be granted "unless the District

16 Court is presented with *newly discovered evidence*, committed *clear error*, or if there is an

17 intervening *change in the controlling law*."  Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-D;

18 <u>Kona Enterprises, Inc. v. Estate of Bishop</u>, 229 F3d 877, 890 (9th Cir. 2000) (emphases added;

19 internal quotes omitted).  Further, a motion for reconsideration "may **not** be used to raise arguments

20 or present evidence for the first time when *they could reasonably have been raised* earlier in the

21 litigation."  <u>Id</u>.; see also <u>Northwest Acceptance Corp. v. Lynnwood Equip.</u>, 841 F.2d 918, 925-26

22 (9th Cir.1988); <u>Fay Corp. v. Bat Holdings I, Inc.</u>, 651 F.Supp. 307, 309 (W.D.Wash.1987)

23 ("Motions for reconsideration ... are not justified on the basis of new evidence which could have

24 been discovered prior to the Court's ruling.").

25    In *Kona*, the Court found untenable plaintiffs' contention that they were justified in arguing

26 that defendants' motion for attorneys' fees must be decided under North Carolina law for the first

27 time by a Rule 59(e) motion for reconsideration since plaintiffs had numerous opportunities to

28

1  argue that defendants' motion for attorneys' fees must be decided under North Carolina law before
2  the district court ruled on that motion. The same is true in this case.

3  There is absolutely nothing "new" about the facts presented in Gemco's Reply brief. In fact,
4  they are old facts which have always been within the grasp of Gemco had it attempted the engage in
5  the slightest bit of good faith reasonable inquiry, as was required of it. Fed. R. Civ. Proc. 11 ("By
6  presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented
7  party certifies that to the best of the person's knowledge, information, and belief, formed after an
8  *inquiry reasonable* under the circumstances . . . the factual contentions have evidentiary support").
9  While Gemco might want to paint itself as the surprise victim of a startling new discovery showing
10 that a witness [Mr. Lutes] with personal knowledge that Bond did actually receive the terms and
11 conditions had emerged after filing its Motion to Compel Arbitration, the facts show that no such
12 exclamation of revelation is warranted.

13 The reality is that Mr. Lutes was practically highlighted by Bond in its Complaint, almost **5
14 months** prior to Gemco's Motion to Compel Arbitration filed on January 3, 2008. In at least six
15 paragraphs (outlined in the statement of facts above), Bond's Complaint continuously identified Mr.
16 Lutes as a key representative of Gemco in the purchase of the Blender. Moreover, Mr. Lutes
17 himself makes clear that he has been Gemco's representative for the past 19 years. Despite this,
18 Gemco asks the Court to believe, despite the clear facts and simple logic, that for the first while in
19 the throws of preparing its Reply to the Motion to Compel Arbitration, out of nowhere through
20 some act of good fortune—poof—Mr. Lutes appeared.

21 Had Gemco really wanted to question Mr. Lutes as to his version of the events, they could
22 have and should have done so, rather than rely on the declaration of an administrative assistant in
23 Gemco's New Jersey office. Since they chose not to (for whatever reason), it is unfair to now
24 compel Bond and the Court to expend precious resources and time to reargue a claim which they
25 failed to explore or inquire into it months ago. It is abundantly clear that "Defendants cannot dash
26 onto the playing field after the final score has been posted, shouting 'surprise, the loss doesn't count
27 because we're all the same team!'." Fay Corp., 651 F.Supp. at 309.
28 ///

1  **B.  The Court Has Exercised Its Discretion In Considering Gemco's New Evidence Produced In Its Reply Brief.**

2

3  Gemco also claims that the Court should have considered "Gemco's newly discovered evidence" because the "Court has discretion to consider new facts or different legal arguments introduced in a reply brief." What Gemco fails to recognize is that the Court *did* exercise its discretion and stated "In its reply brief, defendant argues plaintiff received the terms and conditions, including the arbitration provision, as part of a quote sent on July 13, 2008. It is improper for a moving party to raise a new factual argument in a reply brief." [Court Order, pg. 4, fn.3 citing Sweet v. Pfizer, 232 F.R.D. 360, 364 n.7 (C.D.Cal. 2005).] Not only did the Court exercise its discretion in considering Gemco's new evidence, but the Court's Order makes it clear that it *actually* considered Gemco's new evidence, and found it wanting—"defendant has not shown the terms sent in July of 2006 became part of the contract between plaintiff and defendant entered into nearly a month later." [Court's Order pg. 4, fn.3.] Once the Court has exercised its discretion, a motion for reconsideration, absent highly unusual circumstances (which are not found here) should not be granted.

**C.  No New Material Was Raised In Bond's Opposition.**

Gemco also relies on an **overruled** case from the Southern District of New York, Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y 1991), for its contention that the Court "may properly consider reply pleadings which address new matters raised in opposition papers so as to avoid giving unfair advantage to the answering party." [Application 2:11-14.] The supposed "new matters" raised in Bond's Opposition are "no one from Bond was ever told about or saw Gemco's 'terms and conditions,' which included a provision to arbitrate in Middlesex, New Jersey." [Application 2:15-18.]

Not only does Gemco rely on a nonmandatory case from an appellate jurisdiction outside of this Court's jurisdiction, but its application is fatally flawed. In Litton, Lehman Brothers failed to raise in its moving summary judgment papers "the efficacy of its procedures to prevent the misuse of nonpublic information by its employees." In Litton's opposition, Litton relied on deposition

1  testimony to establish a genuine issue regarding Lehman's in house compliance system.  As a result,
2  the court found that Lehman could address Litton's new material issues.

3  Unlike Litton, Gemco *did* raise the service of the terms and conditions on Bond in its
4  moving papers.  Bond simply replied in its opposition with what it had it had been saying as far
5  back as November 13, 2007 (almost **two months** prior to Gemco's filing of the Motion to Compel
6  Arbitration), namely, that it "has no record of ever receiving this letter to Dr. Kay or the attached
7  'terms and conditions.'"  [Danzig Decl. ¶ 2, Ex. A, email from Micha Danzig to Michael Kirby
8  dated November 13, 2007.]

9  Not only had Bond (through its attorney) made this clear, but it had continued to make this
10  point clear.  Three days later on November 16, 2007, Bond's attorney reaffirmed that Bond "never
11  received the terms and conditions with the Arb clause before Bond paid for the blender.  Thus, *I
12  need to hear from you if your client has any proof that my client received these terms and
13  conditions* before Gemco received payment for the blender, before I can discuss this matter further
14  with my client."  [Danzig Decl. ¶ 3, Ex. B, email from Micha Danzig to Michael Kirby dated
15  November 16, 2007.]  Almost two and a half weeks later, on December 4, 2007, without any proof
16  from Gemco as requested by Bond's counsel showing that Bond received the terms and conditions,
17  Bond's counsel emailed Mr. Kirby again reminding him that "we are still waiting for your response
18  on this, since *Bond has no record of receiving these terms and conditions* and it would not have
19  knowingly agreed to arbitrate any disputes over the purchase of this blender in New Jersey."
20  [Danzig Decl. ¶ 5, Ex. D, email from Micha Danzig to Michael Kirby dated December 4, 2007.]

21  It is clear that Gemco was on notice, at least two months prior to bringing its Motion to
22  Compel Arbitration, that Bond's position was that it had not received the terms and conditions prior
23  to paying for the blender.  Yet now, after Bond reiterates what it had been saying for months prior
24  to Gemco's Motion to Compel Arbitration in its Opposition, Gemco cries foul and asks the Court to
25  allow it to introduce "new" evidence to rebut Bond's "new matters."

26  The Court should reject Gemco's request for obvious reasons: (a) no "new matters" were
27  raised by Bond in its Opposition; and (b) practically speaking, such a far reaching request would
28  have the effect of requiring the Court to allow more "new" evidence by the moving party anytime a

8

1  party contradicts the moving party's moving papers in its opposition. <u>Sweet v. Pfizer</u>, makes it
2  clear that this is not proper.

3      **D.    Allowing Gemco To Continuously Introduce New Evidence Provides It With An Unfair Advantage**
4

5  Gemco goes as far as to claim that Bond raised "new matters" which if not addressed, would
6  give Bond an "unfair advantage." If anyone is to trying to gain an unfair advantage here it is
7  Gemco. Not only does it want a free pass for its failure to engage in a reasonable inquiry as to the
8  factual basis for its Motion to Compel (despite the ample facts at its disposal, i.e. Mr. Lutes being
9  right in front of them), but it wants to drag Bond back through an unnecessary and expensive
10 reconsideration process and if not, appeal, so as to force them to litigate their California based claim
11 in New Jersey, all without any new facts and based on Bond simply consistently responding (as it
12 has all along) to Gemco's claim that it received the terms and conditions before paying for the
13 blender.

14 It is also incredible and unreasonable for Gemco to seek reconsideration of the Court's
15 ruling when it has not provided any evidence or argument (new or otherwise) that its "new" facts
16 would have any impact on the legal issue of whether the terms and conditions (including the subject
17 arbitration clause) could be enforced against Bond. Specifically, the Court raised the obvious point
18 that "defendant has not shown the terms sent in July of 2006 became part of the contract between
19 plaintiff and defendant entered into nearly a month later." [Court's Order pg. 4, fn.3.]. Further, a
20 review of the exhibits attached to Mr. Lutes declaration in Gemco's Reply brief fails to show any
21 indication that Bond accepted Gemco's terms and conditions, in fact they fail to attach Bond's
22 purchase order. Despite Gemco's failing to provide evidence to support its ever changing story on
23 whether or how the terms and conditions were sent and allegedly received, it wants the Court to
24 allow it to reargue, ad infinitum, an argument it failed to make. The time has passed for Gemco to
25 conduct its mini-discovery process while burdening the Court and Bond with its changing factual
26 pattern and the Court should deny its Application in kind.
27 ///
28 ///

9

Case No.: 07CV2400 IEG NLS

IV.     CONCLUSION.

   For the foregoing reasons, Gemco's Application should be denied.

Dated: April 1, 2008                    MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO


                                        By:   s/ Micha Danzig
                                              Micha Danzig
                                              Juan C. Castañeda

                                        Attorneys for Plaintiff
                                        BOND LABORATORIES, INC.

# CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On April 1, 2008, I filed a copy of the following document(s):

**PLAINTIFF BOND LABORATORIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GEMCO'S *EX PARTE* APPLICATION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING ITS MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE**

by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Michael L. Kirby, Esq.<br>KIRBY NOONAN LANCE & HOGE LLP<br>600 W. Broadway, Suite 1100<br>San Diego, CA 92101-3387 | <u>Attorneys for Defendant</u><br>GEMCO, INC.<br><br>Email: mkirby@knlh.com |

Executed on April 1, 2008, at San Diego, California.

                                    s/Micha Danzig
                                    Micha Danzig, Esq.

4292497v.1